697 P.2d 512

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Wanda SMITH, Defendant-Appellant.**

**No. 7761.**

Court of Appeals of New Mexico.

Feb. 5, 1985.

Certiorari Denied March 19, 1985.

Janet Clow, Chief Public Defender, Lynne Corr, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., William C. Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals from the judgment entered on her plea of no contest to charges of harboring a felon and conspiracy to harbor a felon, contrary to NMSA 1978, Sections 30–22–4 and 30–28–2 (Repl. Pamp.1984). The sole issue as stated in defendant's brief is "[w]hether the crimes of harboring a felon and conspiracy to harbor a felon merge under the facts of this case?" One other issue, listed in the docketing statement but not briefed, is abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). We affirm.

## FACTS

The facts necessary for our review come from (1) a memorandum opinion issued by this court in a murder trial involving defendant, *State v. Smith*, Ct.App. No. 7267

(Filed April 5, 1984), as to which we take judicial notice, *State v. Turner*, 81 N.M. 571, 469 P.2d 720 (Ct.App.1970), and from (2) facts related by the prosecutor at the time the plea of no contest was entered. *See* NMSA 1978, Crim.P.R. 21(h) (Cum. Supp.1984).

In *State v. Smith* defendant appealed her conviction of involuntary manslaughter and we reversed. That case recites that defendant and Bernie Smith were interviewed by the police on February 12, 1982 concerning the disappearance of defendant's former husband, Ralph Pierro. Defendant and Smith told the police that they had seen Pierro in Las Cruces on January 29, 1982, and that Pierro had made a phone call to one of defendant's sons a week later. At trial, defendant testified that Smith had fabricated this story, and that she went along with it because she had been frightened. On March 12, 1982, the police again interviewed defendant. She told them she knew nothing of Pierro's whereabouts. On or about January 30, 1982, inquiries were made concerning Pierro's whereabouts. His body was discovered in September, 1982 in a mine shaft east of Deming. Defendant testified that Smith, acting alone, had killed Pierro. She admitted that she had given false information to the authorities by denying knowledge of Pierro's death out of fear for her family and because Smith had persuaded her to do so.

The prosecutor related essentially the above facts, adding, "And finally, and separately, that she had agreed on that story with Bernie Smith." The defense offered nothing to this factual basis at the time the plea was entered.

## MERGER

Under this heading defendant argues, first, that "Wharton's Rule" requires reversal and vacation of the crime of conspiracy to harbor a felon, and second, violation of constitutional protection against double jeopardy requires the same result.

### (A) "Wharton's Rule"

In *State v. Carr*, 95 N.M. 755, 626 P.2d 292 (Ct.App.1981), we said that "Wharton's

Rule provides that an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the particular crime is of such a nature as to necessarily require the participation of two persons for its commission. 1 R. Anderson, Wharton's Criminal Law and Procedure § 89 (1957)." 95 N.M. at 766, 626 P.2d 292.

Defendant argues that because her convictions for harboring Bernie Smith and for conspiracy with Smith to harbor him arose out of the same concert of action, i.e., assisting Smith by lying for him, Wharton's Rule precludes convictions and sentences for both crimes. In a case on point, the court in *United States v. Hagan*, 27 F.Supp. 814 (W.D.Ky.1939), held that conspiracy with fugitives to harbor those fugitives merged with the substantive offense since the substantive offense required concert of action or plurality of agents. While recognizing that the rule has usually been applied in cases such as rioting, dueling and those of a sexual nature, the court in *Hagan* saw no good reason why it should not be applied to harboring a fugitive from justice. In light of more recent decisions which have interpreted Wharton's Rule, we reject defendant's argument and the cases she relies on to support it.

 In *State v. Carr*, this court followed *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), and held that Wharton's Rule only has current vitality as a judicial presumption in the absence of legislative intent to the contrary. Further, the rule applies: (1) when the parties to the agreement are the only persons who participate in the offense and the immediate consequences of the crime rest only on themselves; and (2) when the agreement that attends the substantive offense does not appear likely to pose the sort of threat to society that the law of conspiracy was designed to avert.

 Neither of these factors is present in the context of harboring a felon. The consequences of harboring rest on society, which has strong interest in enforcement of its laws. And harboring will likely be more successful if the felon knows that someone intends to help him. Thus, the danger to society is increased with the agreement.

The most important factor of Wharton's Rule, however, is that concerted action must be logically necessary to the substantive offense. This is similar to saying that conspiracy and the substantive offense are the same crime; however, as we will more fully develop, concerted action is not logically necessary to harboring.

The next question which must be addressed is whether the logic is to be applied in the abstract or with regard to the specific facts of the case. If it is applied in the abstract, then it is applied in a manner similar to the "elements of the crime" test for double jeopardy. *Iannelli* indicates that it should be so applied. The rule focuses on the statutory requirements of the substantive offense rather than the evidence offered to prove those elements at trial. 420 U.S. at 780, 95 S.Ct. at 1291. It only applies to offenses that *require* concerted criminal activity. 420 U.S. at 785, 95 S.Ct. at 1293.

 *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977), teaches that the included offense concept, the same evidence concept, and the merger concept all look to the elements of the offense charged. Here, conspiracy requires an agreement, *see* Section 30–28–2, while harboring does not, *see* Section 30–22–4. Harboring requires knowingly concealing or aiding a felon with the intent that the felon avoid arrest, trial, conviction, or sentence. A conspiracy does not require an actual agreement; a mutually implied understanding is sufficient. *State v. Armijo*, 90 N.M. 12, 558 P.2d 1151 (Ct.App.1976). Such an understanding may be proved by the cooperative actions of the people involved. *State v. Johnston*, 98 N.M. 92, 645 P.2d 448 (Ct.App.1982).

Thus, the question is whether it is possible to conceal or aid a felon without at least the felon's implicit understanding. Concealing or aiding means any kind of assist-

ance, help, or support. *State v. Lucero*, 88 N.M. 441, 541 P.2d 430 (1975). It is possible to knowingly conceal or aid a felon with intent that the felon escape the consequences of the felony without the felon's knowledge. For example, the leader of Gang A witnesses a fight between the leaders of Gang B and C. The leader of Gang B kills the leader of Gang C and runs away. When the police come upon leader C's body, leader A tells the police that leader B ran in the opposite direction of the one in which he ran because leader A does not want the police involved in any gang business. In such a case, while a jury could find, based on the circumstances, that there was a mutually implied understanding between the gang leaders, the jury could also believe leader A, that he gave assistance independently, and without the knowledge, consent, approval, or understanding of leader B. Leader A would still be guilty of harboring because the knowledge, consent, approval, or understanding of leader B is no part of the elements of the crime of harboring.

■ Finally, harboring requires a felon and the intent that the felon avoid the consequences of his felony. These elements are not necessarily part of the crime of conspiracy, which can include any agreement. Thus, the threshold elements of the crime test are not met for the crimes of conspiracy and harboring.

We agree with the court in *United States v. Previte*, 648 F.2d 73 (1st Cir.1981) that "Wharton's Rule is, to some extent, a relic of the discredited merger doctrine and should be interpreted narrowly." 648 F.2d at 77. We do so here and hold that the rule

does not prohibit prosecution, conviction or separate punishment of the conspiracy charge against defendant.

## (B) Double jeopardy

In addition, defendant maintains that under the circumstances of this case her constitutional right to protection against double jeopardy has been violated by the imposition of consecutive terms of imprisonment for the two crimes.

■ Generally, the plea of double jeopardy is no defense to convictions for a substantive offense and a conspiracy to commit that offense. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *State v. Armijo.*

■ As already discussed, the crimes of harboring a felon and conspiracy to harbor are separate crimes requiring different elements for conviction. Thus, defendant was not placed in double jeopardy. Under these circumstances, the trial judge did not err in imposing consecutive terms of imprisonment. *See State v. Deats*, 82 N.M. 711, 487 P.2d 139 (Ct.App.1971).

We affirm the judgment and sentence.

IT IS SO ORDERED.

WOOD and MINZNER, JJ., concur.