**Certiorari Granted, September 20, 2013, No. 34,271**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-093**

**Filing Date:  July 10, 2013**

**Docket No.  30,917**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**DONNIE SILVAS,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF HIDALGO COUNTY**
**Daniel Viramontes, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**ZAMORA, Judge.**

**{1}**     Defendant appeals his convictions for trafficking by possession with intent to distribute methamphetamine and for conspiracy to commit trafficking, the result of a surveillance of his residence during a drug investigation in Lordsburg, New Mexico. Defendant argues that evidence should have been suppressed because it was seized through a pretextual stop of a car in which his co-conspirator was a passenger, and through a

1

warrantless search of his motel room. He also appeals the denial of a motion for a new trial and asserts that his conspiracy conviction should be reversed. We affirm in part and reverse in part.

## BACKGROUND

**{2}** We briefly set out the facts of the case and a time line of events to assist in our analysis below. On March 14, 2008, as part of a narcotics task force operation in Hidalgo County, New Mexico, local officers and agents were monitoring suspected drug activity at the American Motor Inn in Lordsburg. Suspecting a drug deal had taken place in the hotel room of Defendant, and under operational orders to stop every car emerging from the hotel, authorities followed Patricia Ortega as she left the hotel parking lot as a passenger in a white car. Lordsburg Police Sergeant Plowman, assisting in the investigation, looked for probable cause to pull the car over, eventually making a traffic stop for failure to use a turn signal. Ortega and her daughter, also a passenger, got out of the car and went to her motel room at the nearby Budget Motel. The driver of the car was issued a warning, and no evidence was seized from his car. However, Sergeant Plowman remained in contact with Ortega as authorities sought to obtain a search warrant for her motel room. Before the search warrant was obtained, Ortega emerged from her room with 1.7 grams of methamphetamine and told police that she had bought it earlier in the day from Defendant in his room at the American Motor Inn.

**{3}** Later that day, again while waiting for a warrant but before one was issued, law enforcement agents forced their way into Defendant's hotel room while he was gone. No evidence was seized during the search of the hotel room. Defendant was arrested three days later and charged with trafficking a controlled substance and with conspiracy in connection with the March 14 sale of narcotics to Ortega.

**{4}** After a two-day jury trial, Defendant was convicted on both counts. He brought this appeal.

## DISCUSSION

**{5}** Defendant raises four issues on appeal: (1) he contends that a pretextual stop of the car in which Ortega was a passenger produced evidence that should have been suppressed; (2) he argues for another order of suppression because of a warrantless search of his hotel room; (3) he challenges the district court's denial of a motion for a new trial based on the State's failure to disclose an audio recording of Defendant's post-arrest interview with police; and (4) he contends that Wharton's Rule bars a conspiracy conviction under this set of circumstances. We address each issue in order.

## I.      Pretextual Stop

**{6}** Defendant first argues that the traffic stop of the car in which Ortega was a passenger

was pretextual and that any evidence recovered in connection with that traffic stop should be suppressed. *See* N.M. Const. art. II, § 10 ("The people shall be secure in their persons, papers, homes[,] and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without . . . a written showing of probable cause[.]"); *State v. Ochoa*, 2009-NMCA-002, ¶ 25, 146 N.M. 32, 206 P.3d 143 (defining a pretextual stop as "a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but [also] is executed as a pretense to pursue a 'hunch,' a different more serious investigative agenda for which there is no reasonable suspicion or probable cause"). Defendant contends that Sergeant Plowman was under orders to assist in the investigation of Defendant's alleged drug operation by stopping the drivers of cars seen coming out of the American Motor Inn parking lot and committing a traffic violation. The State counters by challenging Defendant's standing to contest the constitutionality of a traffic stop at which he was not present. The State also asserts that even if Defendant was able to establish standing, evidence supports the district court's finding that the traffic stop was constitutionally sound.

**{7}** Defendant filed a motion to suppress all physical evidence and statements obtained as a result of the pretextual stop, citing both the New Mexico Constitution and the Fourth Amendment of the United States Constitution. The district court denied the motion to suppress, concluding that the stop was not pretextual.

### A.      Standard of Review

**{8}** "A district court's denial of a motion to suppress will not be reversed if it is supported by substantial evidence, the only exception being if the ruling was incorrectly applied to the facts." *State v. Van Dang*, 2005-NMSC-033, ¶ 6, 138 N.M. 408, 120 P.3d 830. The district court's findings of fact are reviewed for substantial evidence, and the court's application of the law to those facts is reviewed de novo. *State v. Soto*, 2001-NMCA-098, ¶ 6, 131 N.M. 299, 35 P.3d 304.

### B.      Standing

**{9}** We first address the threshold issue raised by the State: whether Defendant has standing to ask the court to suppress evidence related to a pretextual stop of a car in which he was not riding and did not have a possessory interest. "Standing is . . . a substantive doctrine that identifies those who may assert rights against unlawful searches and seizures." *State v. Porras-Fuerte*, 119 N.M. 180, 183, 889 P.2d 215, 218 (Ct. App. 1994). Whether a party has standing to bring forth a claim is a question of law that we review de novo. *Nass-Romero v. Visa U.S.A. Inc.*, 2012-NMCA-058, ¶ 6, 279 P.3d 772.

**{10}** We have previously stated that "standing is a fact-based issue on which [a d]efendant must be given the opportunity to present evidence to the [district] court." *State v. Leyba*, 1997-NMCA-023, ¶ 6, 123 N.M. 159, 935 P.2d 1171. At the district court's first hearing on Defendant's motion to suppress evidence, the State asserted that Defendant lacked standing

3

to contest the seizure of evidence from Ortega after the stop of the car in which she had been a passenger. The district court found that Defendant had standing to contest the pretextual stop because there was a "nexus" between the stop of the car in which Ortega was a passenger and the arrest of Defendant.

**{11}** In order to establish standing, a defendant "must demonstrate that he had a subjective expectation of privacy that society will recognize as reasonable." *Van Dang*, 2005-NMSC-033, ¶ 7. "Generally, one who owns, controls, or lawfully possesses property has a legitimate expectation of privacy." *Id.* ("[H]olding that where occupants of a car asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized, they were not entitled to suppression of seized items in their subsequent robbery prosecution." (citing *Rakas v. Illinois*, 439 U.S. 128, 148 (1978)). Generally, defendants, when asserting their constitutional rights against searches and seizures, cannot do so vicariously through others. *State v. Munoz*, 111 N.M. 118, 119, 802 P.2d 23, 24 (Ct. App. 1990) ("An individual aggrieved by an illegal search only through the introduction of evidence secured by a search of a third person's premises or property has not suffered an infringement of his [F]ourth [A]mendment rights."); *United States v. Padilla*, 508 U.S. 77, 81 (1993) (per curiam) ("It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure."); *Rakas*, 439 U.S. at 134 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). In *Van Dang*, our Supreme Court held that even the driver of a rental car did not have standing to challenge a search of the car when that person was neither the one who rented the car nor listed as an authorized driver. 2005-NMSC-033, ¶ 10, n.1.

**{12}** We have previously stated that a passenger in a car cannot assert the Fourth Amendment rights of the driver of the car to be free from unreasonable searches and seizures. *State v. Chapman*, 1999-NMCA-106, ¶ 26, 127 N.M. 721, 986 P.2d 1122 ("Even if the driver could raise an invasion of her own Fourth Amendment rights because of a possessory interest in the car, an issue that we do not address or decide, that right may not be vicariously asserted by [the d]efendant."). In *Chapman*, this Court referenced *Alderman v. United States*, 394 U.S. 165, 174 (1969) (plurality opinion) as recognition for the principle that "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." 1990-NMCA-106, ¶ 26. The *Chapman* Court refused to review the merits of that defendant's argument. *Id.*

**{13}** Defendant urges us to analyze the issue of standing to contest a pretextual stop under the New Mexico Constitution. He argues that Article II, Section 10 of the New Mexico Constitution provides broader protections than does the Fourth Amendment of the United States Constitution, therefore, it provides a broader basis for us to find he has standing. We note that our Supreme Court has made reference to the fact that the Court has not yet analyzed the subject of pretextual stops under our state Constitution. *State v. Gonzales*,

4

2011-NMSC-012, ¶ 19, 150 N.M. 74, 257 P.3d 894 (Bosson, J., concurring). Our Supreme Court was recently faced with the argument that "an arrest was unconstitutional because the stop was pretextual at its inception and therefore unconstitutional under Article II, Section 10 of the New Mexico Constitution citing . . . *Ochoa*[.]" *Schuster v. N.M. Dep't of Taxation and Revenue*, 2012-NMSC-025, ¶ 32, 283 P.3d 288. The Court did not address the constitutional argument but instead applied the *Ochoa* test. We decline to undertake such an analysis here.

**{14}** In the case before us, Defendant was not a passenger in the car that was stopped; in fact, he was not present at the scene and played no role in the supposed pretextual stop and subsequent seizure of evidence from Ortega, who had already left the scene of the traffic stop. Defendant had no possessory interest in the car. Even the evidence seized from Ortega had a tenuous connection to the stop of the car. Ortega had returned to her own motel room. She voluntarily emerged with the methamphetamine, which she voluntarily handed over to the police without the need to conduct a search. She also voluntarily provided unsolicited details about the purchase of the drugs. *See State v. Soto*, 2008-NMCA-032, ¶ 25, 143 N.M. 631, 179 P.3d 1239 ("Where the acquisition of evidence is sufficiently removed from the unlawful police conduct, the deterrent value of excluding it is diminished." (internal quotation marks and citation omitted)).

**{15}** At the suppression hearing, the district court ruled that Defendant had standing and that the stop of the car Ortega was riding in was not pretextual. We will affirm a ruling of a district court if it is right for any reason. *See Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 ("This Court may affirm a district court ruling on a ground not relied upon by the district court, [but] will not do so if reliance on the new ground would be unfair to appellant." (alteration in original) (internal quotation marks and citation omitted)).

**{16}** Defendant's challenge to the pretextual stop of the car amounts to a vicarious assertion of the Fourth Amendment rights of others and his motion challenges the stop to the extent that it led to the seizure of evidence. Consistent with *Chapman*, we conclude that Defendant does not have standing to argue a motion to suppress evidence that may have resulted from the pretextual stop of a car in which he neither was a driver, a passenger, nor did he have a possessory interest in the car. 1999-NMCA-106, ¶ 26. Therefore, it was not error for the district court to deny the motion to suppress evidence that may have resulted from the pretextual stop alleged by Defendant.

## II.     Warrantless Search

**{17}** Defendant next argues that a warrantless search of his hotel room was improper and that the district court should have granted his motion to suppress evidence. He acknowledges that no evidence was obtained from the hotel room but he contends that the infringement on his constitutional right to be free from unreasonable searches and seizures was "so egregious" that "some form of remedy" should be crafted, such as "the suppression of all evidence obtained through the entire unconstitutional investigation in this matter." We

employ the same standard of review articulated above to analyze this second suppression issue.

**{18}** The district court took note of the State's argument that the pretrial motion to suppress was the subject of eight hours of hearings, and Defendant failed to raise the issue of the hotel room search during that time. The court then observed that the motion to suppress late in the proceedings appeared to be moot, stating that it:

> has to consider that the defense is asking for suppression of physical evidence. There was no physical evidence obtained in that particular search. The physical evidence had been obtained prior to that. That has been discussed and argued substantially prior to the beginning of trial today.
>
> The [c]ourt finds that the motion to suppress filed at this late date . . . still would not produce anything such that it would justify a granting of that motion; therefore, the [c]ourt will deny the motion to suppress.

**{19}** A reviewing court will not find reversible error unless that error results in prejudice to the defendant. *Kysar v. BP Am. Prod. Co.*, 2012-NMCA-036, ¶ 21, 273 P.3d 867 ("[E]ven if a district court makes an erroneous evidentiary ruling, it does not constitute reversible error unless it results in prejudice."); Rule 11-103(A) NMRA ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party[.]"); *City of Albuquerque v. Ackerman*, 82 N.M. 360, 365, 482 P.2d 63, 68 (1971) ("Harmless error in the exclusion of evidence cannot be the basis for a new trial."). Courts in other jurisdictions have held that a motion to suppress evidence is moot when there is no evidence seized. *United States v. Stearn*, 597 F.3d 540, 545 n.3 (3d Cir. 2010) (ruling that "because no evidence was seized at this location, this point is moot"); *United States v. Fernandez*, 500 F. Supp. 2d 661, 667 (W.D. Tex. 2006); *State v. Keawe*, 108 P.3d 304, 310 (Haw. 2005); *People v. Finch*, 854 N.Y.S.2d 885, 890 (2008); *State v. Sweet*, 675 P.2d 1236, 1240 (Wash. Ct. App. 1984) ("Because there was no evidence to suppress, there can be no error.").

**{20}** In the case before us, no evidence was seized after the officers' unwarranted entry into Defendant's hotel room. Thus, no prejudice was suffered by Defendant. Therefore, the district court did not err in denying the motion to suppress evidence pertaining to the hotel room search.

## III. Failure to Disclose Recording

**{21}** After his conviction, Defendant moved for a new trial, claiming that he was prejudiced by the State's failure to produce the police-taped recording of Defendant's interview while in custody. An audio recording of part of the interview turned up after trial and was provided to defense counsel. Defendant filed his motion for a new trial on September 30, 2010. The State filed its response on October 15, 2010. Three days later, the

6

district court entered its judgment and sentence. Defendant filed his notice of appeal on November 17, 2010. We were unable to find an order entered by the district court denying Defendant's motion for new trial in the court record. However, common sense would dictate that the court's entry of the judgment and sentence indirectly denies the motion.

**{22}** We will not reverse a district court's denial of a motion for a new trial absent a manifest abuse of discretion. *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{23}** Our courts have adopted a three-part test to determine whether the loss of evidence by the State that leads to a deprivation is considered reversible error. *State v. Chouinard*, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981). A court must address whether "[(]1) [t]he [s]tate either breached some duty or intentionally deprived the defendant of evidence; [(]2) [t]he improperly 'suppressed' evidence must have been material; and [(]3) [t]he suppression of this evidence prejudiced the defendant." *Id.* The purpose of the test "is to assure that the [district] court will come to a determination that will serve the ends of justice." *Id.* Factors to consider in applying the test "include the presence of negligence or bad faith on the part of the state, the importance of the evidence to the defendant's case, and the amount of other evidence of guilt adduced at trial." *State v. Bartlett*, 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct. App. 1990).

**{24}** In the case before us, we focus on the first and third *Chouinard* factors. The State asserts that Defendant was alerted to the existence of a recorded interview by police two years before trial; that the State repeatedly tried to obtain the recorded statement before trial; that it was believed that the statement had been recorded over and lost; and that the recording had been misplaced by law enforcement officers but was found after the trial ended. There was no evidence presented of bad faith on the part of the State.

**{25}** If Defendant cannot show that he was prejudiced by the misplacement of the recording, then his argument fails. To show prejudice, Defendant must establish that he was unable to receive a fair trial without the missing evidence. *State v. Sanchez*, 1999-NMCA-004, ¶ 8, 126 N.M. 559, 972 P.2d 1150.

> To establish . . . whether a defendant will be able to receive a fair trial in the face of lost evidence . . . , a court must . . . weigh the lost evidence against the remaining evidence available to the defendant, including his or her ability to cross-examine witnesses and to use the loss of the evidence in preparing a defense.

*Id.* ¶ 9.

7

**{26}** An officer present at the interview, Agent De La Garza, testified as a witness at trial and was cross-examined by Defendant's counsel, including specific questions about the missing recording and the notes taken by him and a fellow officer. The ability to cross-examine an officer who conducted the interview and recording satisfies one factor from *Sanchez* in assessing whether Defendant had the opportunity to receive a fair trial in the face of lost evidence.

**{27}** Defendant argues that he could have used the recording at trial to draw out additional evidence and to try to undermine Agent De La Garza's account of the interview. At trial, the State submitted as evidence the notes of two officers who were present at the interview with Defendant. According to those notes, Defendant, after signing a waiver of his *Miranda* rights, confessed to selling methamphetamine out of his room at the American Motor Inn, including to Ortega; named the sources of the drugs he obtained; and provided details of his weekly income from selling drugs. On the recording, which is of poor quality and captures only a seven-minute portion of the interview, Defendant is heard telling the officers that he sold about one ounce of methamphetamine per week to bring in about $1,800 in order to finance his expenses living at the hotel and that one of his sources for drugs was a man named Robert Munoz. When he testified at trial, Defendant denied selling drugs or knowing Munoz. The recording, had it been available at trial, would have supported the notes and testimony of the officers and would have undercut the claims of Defendant. The absence of the recording may have benefitted Defendant because it was not available to question or to impeach his testimony.

**{28}** Applying *Chouinard*, we conclude that Defendant has not established that he was prejudiced by the discovery and disclosure of a portion of his recorded statement with law enforcement officers after the trial had concluded. Therefore, it was not an abuse of discretion for the district court to deny his motion for a new trial based on the late disclosure of the recording.

## IV.    Conspiracy Conviction and Wharton's Rule

**{29}** Finally, Defendant asserts that Wharton's Rule precludes a charge of conspiracy in this case because the underlying charge of trafficking—involving an exchange of drugs between Defendant and Ortega—is confined to only those two participants and constitutes the same conduct as that underlying the conspiracy. The State contends that Defendant failed to preserve this issue and that we should review such an unpreserved issue for fundamental error. Defendant contends that Wharton's Rule is a matter of statutory interpretation that involves questions of double jeopardy and double jeopardy can be raised at any time. Our United States Supreme Court has specifically held that "Wharton's Rule does not rest on principles of double jeopardy[.]" *Iannelli v. United States*, 420 U.S. 770, 782 (1975). "[Wharton's Rule] has current vitality only as a judicial presumption [of merger], . . . in the absence of legislative intent to the contrary." *State v. Carr*, 95 N.M. 755, 766, 626 P.2d 292, 303 (Ct. App. 1981), *overruled on other grounds as recognized by State v. Olguin*, 120 N.M. 740, 906 P.2d 731 (1995).

8

**{30}** Because this issue was not properly raised below and is raised for the first time on appeal, it will be reviewed for fundamental error. *State v. Cunningham*, 2000-NMSC-009, ¶ 8, 128 N.M. 711, 998 P.2d 176. The doctrine of fundamental error exists only "for the protection of those whose innocence appears indisputabl[e], or open to such question that it would shock the conscience to permit the conviction to stand." *Cunningham*, 2000-NMSC-009, ¶ 13 (internal quotation marks and citation omitted); *see also State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992) (finding fundamental error upon one or more of the following bases: "there has been a miscarriage of justice;" the question of the defendant's guilt "is so doubtful that it would shock the conscience" to allow his conviction to stand; or "substantial justice has not been done"). We will reverse for fundamental error when the foundation or basis of a defendant's case or an essential right in a defense is affected. *Id.* ¶ 13.

**{31}** Wharton's Rule states that "an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the particular crime is of such a nature as to necessarily require the participation of two persons for its commission." *State v. Smith*, 102 N.M. 512, 514, 697 P.2d 512, 514 (Ct. App. 1995) (internal quotation marks and citation omitted). By raising Wharton's Rule, the issue before us is whether the crime of trafficking by possession with intent to distribute methamphetamine and conspiracy to commit trafficking become one crime.

**{32}** "The classic Wharton's Rule offenses–adultery, incest, bigamy, [dueling]– are crimes that are characterized by the general congruence of the agreement and the completed substantive offense." *Iannelli*, 420 U.S. at 782. In these instances, "[t]he parties to the agreement are the only persons who participate in [the] commission of the substantive offense[.]" *Id.* Wharton's Rule applies:

> (1) when the parties to the agreement are the only persons who participate in the offense and the immediate consequences of the crime rest only on themselves; and (2) when the agreement that attends the substantive offense does not appear likely to pose the sort of threat to society that the law of conspiracy was designed to avert.

*Smith*, 102 N.M. at 514, 697 P.2d at 514. "The most important factor . . . is that concerted action must be logically necessary to the substantive offense. This is similar to saying that conspiracy and the substantive offense are the same crime[.]" *Id.*

**{33}** There are only two cases in New Mexico that have addressed Wharton's Rule, *Carr* and *Smith*. In *Carr,* this Court upheld the conspiracy conviction of a defendant who wrote a prescription that was used to pass a controlled substance on to other purchasers. 95 N.M. at 766, 626 P.2d at 303. In *Carr*, we stated:

> The harm involved in the substantive offense [of] trafficking in controlled substances . . . is not restricted to the parties to the agreement. The parties

9

to the agreement to traffic are usually not the only persons who participate in commission of the substantive offense: the controlled substances are passed on, as happened here, *to other purchasers.* The agreement that attends the substantive offense does seem to pose those threats to society that the law of conspiracy seeks to avert. An agreement to commit trafficking may very well produce agreements to engage in a more general pattern of criminal conduct as the controlled substances are diverted from their legitimate medical uses.

*Id.* (emphasis added).

**{34}** The *Carr* court found that because of the difference between the parties' agreement to traffic, where the parties were not the only persons who participated in the commission of the substantive offense and traditional Wharton's Rule offenses, it declined to give any significant weight to the Rule's presumption.

**{35}** In *Smith*, the defendant was convicted of harboring a felon and conspiracy to harbor a felon. This Court found that the two crimes did not merge under the facts of the case because the immediate consequences of harboring a felon rests on society, and the harboring of the felon would be more successful if the felon knew someone was helping, thus, the danger to society is increased. *Smith*, 102 N.M. at 514, 697 P.2d at 514. The *Smith* court agreed that a narrow interpretation of Wharton's Rule was required. *Id.* at 515, 697 P.2d at 515; *see United States v. Previte*, 648 F.2d 73, 77 (1st Cir. 1981) (stating Wharton's Rule is, to some extent, a relic of the discredited merger doctrine and should be interpreted narrowly).

**{36}** The federal courts have had more opportunity to address this issue. In *Iannelli*, 420 U.S. 770, the United States Supreme Court carefully analyzed the Rule's justification and its proper role in federal law. *Iannelli* involved the violation of a federal gambling statute. This statute made it a crime for five or more persons to be involved in a gambling business prohibited by state law. The Supreme Court revisited the history of Wharton's Rule which was captured in Wharton's Treatises; its relationship, if any, with double jeopardy; third party exceptions; and legislative intent. *Id.* at 775, 782, 787. *Iannelli* explained that the Rule is essentially an aid for purposes of determining legislative intent. The Supreme Court found that if Congress intended to prevent the possibility of prosecuting conspiracy offenses by merging them into the specific gambling statute, it would have explicitly said so. It did not, therefore, Congress intended each offense to be independent of the other.

**{37}** The Eighth Circuit Court of Appeals has held that when more than two persons were involved in a conspiracy to distribute drugs, Wharton's Rule does not apply. *United States v. Jones*, 801 F.2d 304, 311 (8th Cir. 1986). On the other hand, the Eighth Circuit Court of Appeals has also held Wharton's Rule does apply when a "mere sales agreement with respect to contraband does not constitute a conspiracy; there must be some understanding 'beyond' that before the evidence can support a conviction for conspiracy." *United States*

*v. West*, 15 F.3d 119, 121 (8th Cir. 1994) (citing to *United States v. Prieskorn*, 658 F.2d 631 (8th Cir. 1981)). This principle has been applied in *State v. Roldan*, 714 A.2d 351, 356 (N.J. Super. Law Div. 1998), which held that "[a] simple agreement to buy drugs is insufficient to establish a conspiracy between the seller and the buyer." The *Roldan* court further stated the concerted criminal activity must go "beyond the kind of simple agreement inevitably incident to the sale of contraband[.]" *Id.*

**{38}** The case at hand is distinguishable from *Carr* as there were not multiple purchasers involved, only Ortega. The charge of trafficking with intent to distribute methamphetamine required the participation of the same two people, Defendant and Ortega, who were also involved in any alleged conspiracy to sell the same drugs. Defendant, a single seller, and Ortega, a single buyer, engaging in a single drug transaction. They were the only parties that participated in this particular transfer of two plastic-wrapped packages of methamphetamine. This simple agreement to buy drugs is insufficient to also establish a separate conspiracy between the seller and the buyer. *See West*, 15 F.3d at 121; *see also United States v. Hunter*, 478 F.2d 1019, 1024 (7th Cir.) (1973) (stating that the required participation of the same two persons of a conspiracy is analogous to an individual attempt to commit an individual offense).

**{39}** Unless the Legislature explicitly states otherwise, Wharton's Rule supports the presumption that the Legislature did not intend separate punishments for the conspiracy and the completed substantive crime. *Iannelli*, 420 U.S. at 785-86. After a careful reading of NMSA 1978, Sections 30-28-2 (1979) and 30-31-20 (2006), we are unable to find any indication that the New Mexico Legislature stated a different intention.

**{40}** The agreement between Defendant and Ortega to sell and purchase the methamphetamine was logically necessary for the transferring of the methamphetamine from one to another. Additionally, the immediate consequences of the crime rested only on Ortega, who received a twenty-seven-year sentence, and Defendant, who was convicted of not only the trafficking but the conspiracy as well. Their limited agreement between themselves does not appear likely to pose the sort of threat to society that the law of conspiracy was designed to avert.

**{41}** Our Legislature has not explicitly stated that there should be separate punishments for the conspiracy to commit trafficking and the completed charge of trafficking, where Defendant's and Ortega's concerted actions were necessary for the completion of the trafficking offense. Wharton's Rule precludes Defendant's charge of conspiracy. Substantial justice has not been done where Defendant has been convicted and sentenced for trafficking by possession with intent to distribute methamphetamine (eighteen years, two years parole) and for conspiracy to commit trafficking (nine years, two years parole) when the two charges, in this case, have merged. It is therefore fundamental error to impose a conspiracy conviction as well.

**CONCLUSION**

11

**{42}** For the foregoing reasons, we affirm Defendant's conviction for trafficking, reverse his conviction for conspiracy, and remand to the district court to dismiss Defendant's conspiracy conviction and corresponding sentence.

**{43}** **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR**:

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State v. Silvas_, No. 30,917**

**APPEAL AND ERROR**
Fundamental Error
Preservation of Issues for Appeal
Standard of Review

**CONSTITUTIONAL LAW**
Double Jeopardy
Fourth Amendment
Interstitial Analysis
New Mexico Constitution, General

**CRIMINAL LAW**
Conspiracy
Controlled Substances

**CRIMINAL PROCEDURE**
Double Jeopardy
New Trial
Prejudice
Pretextual Stop
Production of Evidence
Search and Seizure
Standing
Warrantless Search

**EVIDENCE**
Discovery
Lost Evidence
Taped Evidence

**JUDGES**
Abuse of Discretion

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction