# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:**

**Filing Date: February 5, 2015**

**NO. 34,271**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**DONNIE SILVAS**,

Defendant-Respondent.


**ORIGINAL PROCEEDING ON CERTIORARI**
**Daniel Viramontes, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Petitioner


Jorge A. Alvarado, Chief Public Defender
B. Douglas Wood, III, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**BOSSON, Justice.**

{1} A jury convicted Defendant Donnie Silvas of 1) trafficking a controlled substance by possession with intent to distribute pursuant to NMSA 1978, Section 30-31-20(A)(3) (2006), and 2) conspiracy to commit the same crime pursuant to NMSA 1978, Section 30-28-2(A) (1979). Notably, both charges stemmed from one point in time and a single sale of drugs by Defendant. The Court of Appeals overturned the conspiracy conviction based on an expanded use of a judicial presumption, of somewhat ancient origin, known as Wharton's Rule. While we agree with the decision to reverse the conspiracy charge, we do so on a different ground. As explained herein, we conclude that double jeopardy is the better analysis, and in so doing we expressly discourage any future expansion of Wharton's Rule beyond its original contours.

**BACKGROUND**

{2} Defendant, under suspicion of selling illegal drugs out of his motel room in Lordsburg, New Mexico, was placed under surveillance by a federal Border Operations Task Force, acting jointly with the Lordsburg Police Department. In the course of that surveillance, on March 14, 2008, Lordsburg police officer Rodney Plowman saw a white car leaving Defendant's motel and followed it. Officer

Plowman eventually pulled the car over for a traffic violation in front of the Budget Inn. As soon as the vehicle stopped, Patricia Ortega, a passenger, ran from the car into her room at the Inn, where she placed two small packages containing methamphetamine in a desk drawer.

{3}     Ortega ultimately let Officer Plowman into her motel room and gave him the two packages. When subsequently interviewed about the source of the drugs, Ortega admitted to her purchase from Defendant. Three days later, acting under a warrant, Lordsburg police officers arrested Defendant and charged him with trafficking a controlled substance by possession with intent to distribute, and conspiracy to commit the same crime, both charges stemming from his sale to Ortega. A jury convicted Defendant on both charges.

**Court of Appeals Opinion**

{4}     On appeal, our Court of Appeals reversed the conspiracy charge on the basis that it violated Wharton's Rule. For purposes of clarity, we provide a brief explanation. "Wharton's Rule provides an exception to the general rule that conspiracy and the substantive offense planned by the conspirators are separate crimes." *Johnson v. State*, 587 A.2d 444, 452 (Del. 1991). The rule states that "an agreement by two persons to commit a particular crime cannot be prosecuted as a

2

conspiracy when the particular crime is of such a nature as to necessarily require the participation of two persons for its commission." *State v. Silvas*, 2013-NMCA-093, ¶ 31, 310 P.3d 621 (citation omitted), *cert. granted*, 2013-NMCERT-009, 311 P.3d 452. Historically, the prototypical Wharton's Rule offenses were adultery, incest, bigamy, and dueling, crimes which usually involve an agreement between two persons for their commission. *Iannelli v. United States*, 420 U.S. 770, 782 (1975).

{5}     Wharton's Rule serves as a kind of judicial presumption that precludes separate punishment of the conspiracy in the absence of clear legislative intent to punish both crimes. *Id*. at 782. More specifically, Wharton's Rule applies:

> (1) when the parties to the agreement are the only persons who participate in the offense and the immediate consequences of the crime rest only on themselves; and (2) when the agreement that attends the substantive offense does not appear likely to pose the sort of threat to society that the law of conspiracy was designed to avert.

*Silvas*, 2013-NMCA-093, ¶ 32 (citation omitted). "The most important factor . . . is that concerted action must be logically necessary to the substantive offense. This is similar to saying that conspiracy and the substantive offense are the same crime." *Id*. (omission in original) (internal quotation marks and citation omitted).

{6}     Applying Wharton's Rule to the present case, our Court of Appeals held that "[t]he charge of trafficking with intent to distribute methamphetamine required the

3

participation of the same two people, Defendant and Ortega, who were also involved in any alleged conspiracy to sell the same drugs." *Id.* ¶ 38. Continuing, the Court explained that "[t]he agreement between Defendant and Ortega to sell and purchase the methamphetamine was logically necessary for the transferring of the methamphetamine from one to another." *Id.* ¶ 40. Accordingly, the Court of Appeals concluded in the particular context of this case that Wharton's Rule prohibited Defendant from being convicted for both conspiracy and possession with intent (trafficking). *Id.* ¶ 41.

{7}     As we stated earlier, Wharton's Rule is of somewhat ancient origins. It "emerged at a time when the contours of the law of conspiracy were in the process of active formulation." *Iannelli*, 420 U.S. at 781. Since then, our double jeopardy jurisprudence has evolved in a way that now covers most, if not all, circumstances in which Wharton's Rule could theoretically be applied. When the Court of Appeals concluded, describing Wharton's Rule, that "conspiracy and the substantive offense are the same crime" because "concerted action [was] logically necessary to the substantive offense," *Silvas*, 2013-NMCA-093, ¶ 32, it could well have been describing a multiple-punishment, double-description analysis under principles of double jeopardy. Accordingly, rather than expand Wharton's Rule beyond its original

4

context, we proceed to analyze this case under double jeopardy principles and reach the same result.

**DISCUSSION**

{8}	Double jeopardy protects against multiple punishments for the same offense. *See State v. Montoya*, 2013-NMSC-020, ¶ 23, 306 P.3d 426. Cases involving multiple violations of a single statute are referred to as "unit-of-prosecution" cases, while cases involving violations of multiple statutes are "double-description" cases. *Id.* ¶ 30. In double-description cases like the one before us, "[t]he Supreme Court has fashioned a double jeopardy analysis in which the polestar guiding courts is the [L]egislature's intent to authorize multiple punishments for the same offense." *Swafford v. State*, 1991-NMSC-043, ¶ 9, 112 N.M. 3, 810 P.2d 1223.

{9}	This Court has long recognized a two-part test for analyzing double description cases. First, the defendant's conduct must be unitary. *Id*. ¶ 25. If the conduct is not unitary, the analysis ends and double jeopardy does not apply. *Id.* If the conduct is unitary, however, then the second part of the analysis is to determine if the Legislature intended to punish the offenses separately. *Id*. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

5

**Unitary Conduct**

{10} Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished. *Id.* ¶ 28. Although the parties did not argue this issue below, double jeopardy can be raised at any time. NMSA 1978, § 30-1-10 (1963). At oral argument before this Court, the State conceded that Defendant's conduct was unitary, and for good reason. As we shall see, the State's theory of the case as reflected in its presentation to the jury focused solely on the exact moment when Defendant and Ortega exchanged drugs for money. The State used evidence of that single moment in time to prove *both* Defendant's possession with intent and Defendant's conspiratorial agreement with Ortega to commit that same crime. Therefore, the two crimes, as charged by the State in this particular case, were based on one illegal act, making the charged conduct not only unitary, but identical.

**Legislative Intent to Punish Both Crimes Separately**

{11} Given unitary conduct, we now inquire whether Defendant has been punished twice for the same offense, and if so, whether the Legislature intended that result. To determine legislative intent, we look first to the language of the statute. *State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747. "[W]here the [L]egislature has

6

explicitly authorized multiple punishment the judicial inquiry is at an end, [and] multiple punishment is authorized and proper." *State v. Gutierrez*, 2011-NMSC-024, ¶ 50, 150 N.M. 232, 258 P.3d 1024 (first and third alterations in original) (quoting *Swafford*, 1991-NMSC-043, ¶ 11). Absent a clear intent for multiple punishments, we apply the *Blockburger* test. *Swafford*, 1991-NMSC-043, ¶ 30. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

{12}     *Blockburger* provides that "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. If the *Blockburger* test shows that one statute is subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes. *Swafford*, 1991-NMSC-043, ¶ 30. If one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy. *Swick*, 2012-NMSC-018, ¶ 13.

{13}     "That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent." *Swafford*, 1991-NMSC-043, ¶ 31. "[W]e must turn to traditional means of determining legislative intent: the language, history, and subject of the statutes, and we must identify the particular evil sought to be addressed

7

by each offense." *Montoya*, 2013-NMSC-020, ¶ 32 (internal quotation marks and citations omitted).

{14} *Blockburger* continues to retain a place in our jurisprudence as a kind of surrogate for construing legislative intent. In recent years, however, when interpreting generic, multipurpose criminal statutes which may in the abstract "require proof of a fact [the other does] not," this Court has modified the *Blockburger* test to require more. We now consider not only whether each statute *in the abstract* requires "proof of a fact that [the other does] not," but also whether the statute, as *applied* by the State in a given case, overlaps with other criminal statutes so that the accused is being punished twice for the same offense. *Gutierrez*, 2011-NMSC-024, ¶¶ 57-58. "[W]hen a statute is vague and unspecific, our courts must evaluate legislative intent by considering the State's legal theory independent of the particular facts of the case. Our courts may do this by examining the charging documents and the jury instructions given in the case." *Swick*, 2012-NMSC-018, ¶ 21 (internal quotation marks and citations omitted).

{15} *Gutierrez* is a helpful model for the present case. In *Gutierrez*, the jury convicted the accused of both armed robbery and the unlawful taking of a motor vehicle, both crimes arising out of the single act of stealing a car. 2011-NMSC-024,

8

¶ 1. Because the armed robbery statute is a generic, multipurpose statute, we considered not only the statutory elements in the abstract but also the armed robbery statute as applied by the State to that particular prosecution, as revealed in the charging documents and jury instructions. *See id.* ¶ 58.

{16}    In so doing, we concluded that although armed robbery could be committed in various ways that would not involve the unlawful taking of a car, in this particular case the theft of the car was the basis for both convictions. *See id.* ¶ 60. The crime of unlawfully taking a car was completely subsumed within the crime of armed robbery as applied to that case, thereby punishing the accused twice for the same offense in violation of the double jeopardy clause. *See id.* This Court held "that Child's armed robbery conviction [in the context of that case] required proof of the taking of [a] 1996 Oldsmobile, and it therefore subsumed the [separate charge for the] unlawful taking of [the same] motor vehicle conviction, [thereby] placing Child in double jeopardy." *Gutierrez*, 2011-NMSC-024 ¶ 60.

{17}    *Gutierrez* controls this case.[1] Here, the State charged Defendant under the Controlled Substances Act, § 30-31-20(A)(3)(c), which provides that to "traffic"

---

[1]We acknowledge that these charges against Defendant were tried a year before our opinion issued in *Gutierrez*, which might explain why double jeopardy was not an issue at trial.

means *inter alia*, "possession with intent to distribute . . . methamphetamine, its salts, isomers and salts of isomers." In addition, the State charged Defendant under the conspiracy statute, § 30-28-2(A), which provides that "[c]onspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." These two statutes are different and in the abstract they contain different elements. However, applying the principles of *Gutierrez*, we see the conspiracy statute as a generic, multipurpose statute that can apply to various forms of conduct. Therefore, we must narrow our focus and consider the statute in light of the particular conspiracy alleged in this case. In so doing, we look to the charging documents and the instructions to the jury. They are very telling.

{18}     As instructed, the jury had to find that "[t]he defendant intended to transfer [methamphetamine] to another" for the charge of trafficking by possession with intent to distribute. The jury instruction providing the elements for the conspiracy charge included, "[t]he defendant and another person by word or acts agreed together to commit Possession with Intent to Distribute (methamphetamine)." According to the instructions, then, the State appears to have directed the jury to the same act for both crimes—the sale of drugs from Defendant to Ortega—as the basis to convict for both crimes.

10

{19} Our reading of the instructions is confirmed when we look to how the prosecutor asked the jury to apply these instructions. The State's legal theory for both crimes rested upon Defendant's unitary conduct of transferring the drugs from his hand to Ortega's hand and Ortega transferring the money to Defendant. In the State's closing argument, the prosecutor said:

> I want to narrow it down like a laser beam. . . . We are talking about that instant in time whenever he passed . . . the two baggies of methamphetamine from his hand to Patricia Ortega's hand on March 14. That's the only instance that is of importance here. That is the crux of the charges against him, is whenever it went from his hand to hers, what was in his mind whenever he gave it to her.

The prosecutor further argued, "All we have to prove is that he possessed it, he intended to give it to another person, and he gave it to another person. That's it." Finally, he said "Defendant possessed. Defendant gave it to Patricia Ortega. He intended to do so, and he did it on March 14. Period. Boom. End of story."

{20} The prosecutor also emphasized his belief that the agreement necessary for the conspiracy charge can stem from the same act.

> I went through the process of how she agreed with the defendant, Donnie Silvas, by words. We agreed that she asked for narcotics. He gave her narcotics; he agreed to do that. . . . He told her how much. She gives him the money. That's words. By acts, there's a transaction between the two people.

11

Moreover, the prosecutor asked Ortega, "So you agreed and he agreed? He agreed to give it to you by act and he gave it to you, and you agreed to take it by act and you took it, correct?" Ortega agreed that she did. Notably, the State did not offer evidence of any other agreement on which to base its conspiracy charge.

{21}    The State relied on the sale of the narcotics to support its theory under both charges. As Defendant correctly describes it in his briefing to this Court, "[t]herefore, the jury in this case was asked to answer one question twice: whether [Defendant] agreed to give and then gave methamphetamine to Ms. Ortega." The State asked the jury to infer Defendant's intent and his agreement with Ortega from the same conduct. Importantly, the State did not ask the jury to infer a conspiracy from anything other than the simple act of exchanging drugs for money. Thus, as the State presented this case to the jury, the inescapable conclusion is that Defendant was convicted twice and is being punished twice for the same offense.

**In Most Cases Conspiracy Can Still Be Separate from the Substantive Offense**

{22}    Unlike this case, conspiracy is typically treated separately from the substantive offense. Federal courts have long recognized "that conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes, because the agreement to do the act is distinct from the [completed] act itself." *United States*

12

*v. Fornia-Castillo*, 408 F.3d 52, 69 (1st Cir. 2005) (alteration in original) (internal quotation marks and citations omitted); *see also United States v. Felix*, 503 U.S. 378, 390 (1992); s*ee also Murr v. United States*, 200 F.3d 895, 902 (6th Cir. 2000). The United States Supreme Court has held that evidence of certain overt acts for conspiracy can be based on the substantive offense and not violate double jeopardy. *Felix*, 503 U.S. at 380-81. However, the cases cited above involved multilayered conduct in which evidence of the conspiracy did not rely solely on evidence of the substantive crime—a single act in time and space.

{23}    For example, in *Fornia-Castillo*, the defendant was charged with conspiracy and later charged with substantive drug offenses. 408 F.3d at 58. The conspiracy charge stemmed from a surveillance task force following suspected drug dealers who delivered large amounts of money to the defendant on a certain date. *Id.* at 56-57. Evidence of the defendant's substantive drug charges arose from three separate instances—different dates from the conspiracy charge—when the defendant and two co-conspirators arranged for the delivery of drugs. *Id*. at 59-61. Overall, the defendant was charged with criminal conduct that spanned over three years. *Id.*

{24}    Likewise in *Murr*, the defendant operated a drug ring that operated over the course of an entire year. 200 F.3d at 898-900. The defendant and his co-conspirators

13

traveled to purchase the drugs, sold the drugs, and also laundered money through the defendant's business partner. *Id*. When discussing the double jeopardy issue, the trial judge stated: "Here, the two indictments charge different violations on different days, in different places, which involve different people." *Id*. at 901-02.

{25}     Finally, in *Felix*, the defendant was charged with manufacturing, possessing, and distributing methamphetamine as well as conspiracy over a four-month period. 503 U.S. at 382. The defendant also was named in nine overt acts as support for the conspiracy charge, two of which were based on the substantive crime for which he was previously convicted. *Id*.

{26}     Each of these cases offered evidence of a conspiracy that was at least partially distinct from the evidence of substantive crimes. While there may be a crossover of evidence, the conspiracy charge involved more than just the substantive crime. New Mexico law also requires evidence of more than just the substantive crime.

{27}     Under New Mexico law, courts have upheld separate convictions for conspiracy to commit trafficking and the act of trafficking when the evidence showed more than just the exchange of drugs for money. In *State v. Armijo*, 1976-NMCA-125, ¶ 3, 90 N.M. 10, 558 P.2d 1149, the Court determined that evidence supporting the distribution counts was clearly relevant to the conspiracy charge. The case

14

involved more than just a single sale, however. There was evidence of "transactions between defendant and [her co-conspirator] on December 31, 1974, and January 4, January 9, January 22, January 30, February 1, February 13 and February 19, 1975." *Id*. ¶ 4. The State also introduced evidence that the transactions were in an amount that suggested a conspiracy to resell at least part of the drugs to others. *Id.* ¶ 8. There was also evidence of communications between the parties separate from the actual purchase. *Id*. ¶¶ 7-8.

{28} The *Armijo* Court held that "[t]he size, frequency and manner of the transactions in this case were evidence sustaining defendant's conviction for conspiracy . . . to traffic in heroin. The jury could properly conclude that the heroin defendant supplied . . . was for resale." *Id*. ¶ 8. *See also State v. Borja-Guzman*, 1996-NMCA-025, 121 N.M. 401, 912 P.2d 277, ¶ 29 (holding that there was sufficient evidence for the conspiracy charge because the defendant and his co-conspirator received a counteroffer to sell heroin and methamphetamine to undercover agents, the two conferred, agreed to accept the new price, and agreed to meet at the same location later that day to conclude the transaction); *see also Ontiveros v. Dorsey*, No. 96-2036, 1996 WL 603276, at *1-3 (10th Cir. Oct. 22, 1996) (unpublished) (upholding the conspiracy conviction because the defendant said his co-conspirator would be in El

15

Paso, the co-conspirator stated that his source was reliable, the van used to transport the cocaine belonged to the co-conspirator, and finally, the co-conspirator was involved in hiding and transporting the cocaine to New Mexico). The present case, of course, presents the converse scenario involving a complete overlap in evidence.

**CONCLUSION**

{29}    For the reasons stated, we affirm the decision of the Court of Appeals to reverse Defendant's conviction for conspiracy. We base our holding on principles of double jeopardy and not on Wharton's Rule. We remand for further proceedings consistent herewith.

{30}    **IT IS SO ORDERED.**


_____
                        **RICHARD C. BOSSON, Justice**

**WE CONCUR:**


_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**

17