This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36936

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TEDDY SOSA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** A jury convicted Defendant Teddy Sosa of aggravated burglary (commits battery) (NMSA 1978, § 30-16-4(C) (1963)), aggravated assault with a deadly weapon (NMSA 1978, § 30-3-2(A) (1963)), abuse of a child (does not result in death or great bodily harm) (NMSA 1978, § 30-6-1(D) (2009)), and battery (NMSA 1978, § 30-3-4 (1963)). On appeal, Defendant argues his convictions for aggravated burglary, battery, and child abuse violate double jeopardy, and the district court made evidentiary errors that, when

considered together, deprived him of a fair trial. We conclude Defendant's convictions for both aggravated burglary and battery violate double jeopardy. We otherwise affirm.

**BACKGROUND**

{2}    Defendant's convictions arise from a violent incident that occurred at the home of his ex-wife, Lorina Rodriguez. At the time of the incident, Rodriguez lived with her three children: Tommy (age eighteen), A.S. (age fourteen), and R.S. (age ten). Defendant is the father of R.S., but is not biologically related to Tommy or A.S. Defendant and Rodriguez informally shared custody of R.S., who would go to Defendant's home— located about a half a block away—about every other week. Rodriguez testified that she unsuccessfully sought child support from Defendant and that she had frequent disputes with Defendant's girlfriend, Giovannah Vaughn, about Vaughn staying at Defendant's home, which Rodriguez believed was R.S.'s.

{3}    On the day in question, Defendant called Rodriguez, demanding that she take R.S. to him. Rodriguez took R.S. to Defendant's house, but he was not there. Rodriguez then went home and minutes later, Defendant called her again. Defendant was angry and did not believe that Rodriguez had tried to take R.S. to his house. Defendant said he was on his way over. He drove to Rodriguez's house, came to the door, and pushed Rodriguez by the neck, making his way into the house without Rodriguez's permission.

{4}    While inside, Defendant got a kitchen knife, and after dropping it, he picked up a knife sharpener and ran after A.S. Rodriguez hit Defendant in the neck with a bat. Defendant continued pursuing A.S., pinned her against the wall, and slapped her. Defendant held the knife sharpener as if he was going to stab A.S. Tommy tried to calm Defendant down, but Defendant only turned his attention to Tommy, punching him in the face repeatedly. Rodriguez and A.S. hit Defendant with baseball bats to try to make Defendant stop punching Tommy, to no avail. Defendant then turned back to A.S., chasing her around and calling her a "whore" and a "slut." Eventually, Defendant got tired and left. Further discussion of relevant facts is reserved for our analysis.

**DISCUSSION**

**I.    Double Jeopardy**

{5}    Defendant argues that his convictions for aggravated burglary and battery, or alternatively, child abuse, violate his constitutional right to be free from double jeopardy. "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Defendant advances a "double description" challenge, contending "the same conduct result[ed] in multiple convictions under different statutes." *Id.* In such cases, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶¶ 9, 25, 112 N.M. 3, 810 P.2d 1223: (1) whether the conduct is unitary and (2) if so, whether the Legislature intended to punish the offenses separately. *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616. "Only if the first part of the test is answered in the affirmative, and the second in the negative,

will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* (internal quotation marks and citation omitted).

## A.      Aggravated Burglary and Battery

**{6}**      Defendant's conviction for aggravated burglary was based on the theory that, after he entered Rodriguez's home without authorization, he committed a battery upon Tommy, Rodriguez, or A.S. *See* § 30-16-4(C) (requiring the commission of a battery to support aggravated burglary conviction); § 30-3-4 (defining "battery" as "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner"). Defendant separately was convicted of committing battery upon Tommy. The State thus relied, at least in part, upon unitary conduct—Defendant's battery of Tommy—for both convictions. *See Silvas*, 2015-NMSC-006, ¶¶ 18-19 (confirming that the conduct was unitary based on the jury instructions, in which the state "directed the jury to the same act for both crimes . . . as the basis to convict for both crimes").

**{7}**      Although the State argues that the jury *could* have convicted Defendant of the aggravated burglary charge based on Defendant's separate battery of Rodriguez or A.S., it nevertheless acknowledges that unitary conduct must be presumed in this case under our Supreme Court's decision in *State v. Foster*, 1999-NMSC-007, 126 N.M. 646, 974 P.2d 140, *abrogation on other grounds recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. *See Foster*, 1999-NMSC-007, ¶ 27 ("[T]he Double Jeopardy Clause . . . require[s] a conviction under a general verdict to be reversed if one of the alternative bases for conviction provided in the jury instructions is legally inadequate because it violates a defendant's constitutional right to be free from double jeopardy[.]" (internal quotation marks omitted)). Indeed, "[w]hen the conduct underlying two convictions could be unitary under the facts, but we are unsure if the jury relied on that unitary conduct for both convictions, we nevertheless assume for the purposes of our double jeopardy analysis that the conduct was unitary because one of the options/alternatives/scenarios is legally inadequate." *State v. Simmons*, 2018-NMCA-015, ¶ 27, 409 P.3d 1030.

**{8}**      Having presumed unitary conduct, we turn to the second part of the *Swafford* analysis. *See Silvas*, 2015-NMSC-006, ¶ 9. The State concedes that Defendant's battery conviction is subsumed within the aggravated burglary charge, and thus Defendant's conviction for battery violates double jeopardy. While we are not bound by the State's concession, *see State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076, we agree. Because battery was the aggravating element of Defendant's aggravated burglary conviction, the entire crime of battery was subsumed within aggravated burglary. *See Silvas*, 2015-NMSC-006, ¶ 12 (providing that where "one statute is subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes"). Therefore, "the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 1991-NMSC-043, ¶ 30. Consequently, Defendant's conviction for battery must be vacated. *See State v. Santillanes*, 2001-NMSC-018, ¶ 37, 130 N.M. 464, 27

P.3d 456 (concluding that when double jeopardy has been violated, the lesser offense is vacated).

## B.    Aggravated Burglary and Child Abuse

**{9}**    Defendant also argues that his convictions for aggravated burglary and child abuse violate double jeopardy. As with his previous argument, Defendant contends that his conduct was unitary because the State relied upon his battery of A.S. for both charges, and the State concedes that the conduct is presumed unitary under *Foster*. We thus turn to the second *Swafford* prong to determine whether the Legislature intended to punish the offenses separately. *See Silvas*, 2015-NMSC-006, ¶ 9; *State v. Franco*, 2005-NMSC-013, ¶ 12, 137 N.M. 447, 112 P.3d 1104 (stating that "[t]he sole limitation on multiple punishments is legislative intent" (alteration, internal quotation marks, and citation omitted)).

**{10}**    "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. When a statute is "vague and unspecific" or "written with many alternatives," however, we apply a modified *Blockburger* analysis, *State v. Gutierrez*, 2011-NMSC-024, ¶ 59, 150 N.M. 258 P.3d 1024—"look[ing] to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted [and] filling in the case-specific meaning of generic terms in the statute when necessary," *Branch*, 2018-NMCA-031, ¶ 25. We do so "independent of the particular facts of the case . . . by examining the charging documents and the jury instructions given in the case." *Swick*, 2012-NMSC-018, ¶ 21. If, under modified *Blockburger*, "each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute." *Id.* ¶ 13.

**{11}**    Here, under the State's theory as set out in the jury instructions, Defendant's convictions for child abuse and aggravated burglary each require proof of a fact that the other does not. For aggravated burglary, the State was required to prove that Defendant entered a dwelling without authorization with the intent to commit a felony therein—a fact not required for child abuse. *Compare* § 30-16-4(C), *with* § 30-6-1(D)(1). For child abuse, the State was required to prove not only that Defendant "slapped" A.S., but also that he "threatened to kill [A.S.] with a knife sharpener," "caused [A.S.] to be placed in a situation that endangered the life or health of [A.S.]," and "showed a reckless disregard for the safety or health of [A.S.]"—all facts that were not required to sustain the aggravated burglary charge. *Compare* § 30-6-1(D)(1), *with* § 30-16-4(C). Because one offense is not subsumed within the other, we presume that the Legislature intended separate punishments for each crime. *See Swafford*, 1991-NMSC-043, ¶ 31.

**{12}**    This presumption is not conclusive, but rather "may be overcome by other indicia of legislative intent." *Id.* The only indicium discussed by the parties is whether the statutes are "directed toward protecting different social norms and achieving different

policies." *Id.* ¶ 32. If, as here, the statutes address different social harms, then they "can be viewed as separate and amenable to multiple punishments." *Id.* In this case, "one purpose of the child-abuse-by-endangerment statute is to assure the protection of children, a highly vulnerable population." *State v. Ramirez*, 2018-NMSC-003, ¶ 54, 409 P.3d 902. By contrast, the purpose of the aggravated-burglary statute is to protect the possessory interest in excluding others from property. *See State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 41, 285 P.3d 622. ("Chief among the possessory interests that burglary is designed to protect is the right to exclude."). In light of this, and also having considered the other indicia of legislative intent, we conclude the presumption that the Legislature intended multiple punishments has not been overcome. Therefore, Defendant's convictions for aggravated burglary and child abuse do not violate double jeopardy.

## II. Evidentiary Challenges

**{13}** Defendant argues the district court made three evidentiary errors that, when considered together, deprived him of a fair trial. The admission or exclusion of evidence is reviewed "under an abuse of discretion standard and [we] will not reverse in the absence of a clear abuse." *State v. Candelaria*, 2019-NMCA-032, ¶ 41, 446 P.3d 1205 (internal quotation marks and citation omitted). "An abuse of discretion occurs when a ruling is against logic and is clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

## A. Defendant's Video of Rodriguez and Vaughn Arguing at Defendant's House

**{14}** Defendant's first alleged evidentiary error is the district court's exclusion of a cell-phone video depicting an argument between Rodriguez and Vaughn, Defendant's girlfriend, at Defendant's house. Prior to trial, the State filed a motion in limine to exclude the video, arguing, among other things, that the video was not relevant. The district court, after watching a portion of the video, agreed with the State and excluded the video, stating that the court did not believe the video was relevant and that it was more prejudicial than probative. On appeal, Defendant argues that the video was relevant because it was probative (1) of Rodriguez's bias or motive to fabricate; (2) as impeachment evidence of Rodriguez's testimony that she was afraid of Defendant, wanted nothing to do with him, and tried to prevent R.S. from seeing Defendant following the incident; and (3) of Rodriguez's demeanor following the incident. As we explain, we conclude the district court did not abuse its discretion in excluding the video.[1]

**{15}** The video depicts an agitated and aggressive Rodriguez, who repeatedly uses disparaging and racially-charged language toward Vaughn. Rodriguez accuses Vaughn of "bum[ming] off of [Defendant]" and says Vaughn will not live at the house for free. Rodriguez repeatedly states that the house is her daughter's and not Vaughn's. Rodriguez also suggests that she is closer to Defendant than Vaughn, saying that

---

[1] We assume for purposes of our analysis that the video was properly authenticated.

Defendant called her from jail that morning and that Defendant does not want Vaughn at his house.

**{16}** Defendant first argues the video should have been admitted as evidence of Rodriguez's bias or motive to fabricate. *See State v. Santillanes*, 1974-NMCA-092, ¶ 5, 86 N.M. 627, 526 P.2d 424 ("Bias of a witness is always relevant." (internal quotation marks and citation omitted)). He asserts the video tended to show "an ongoing property dispute between [Defendant] and [Rodriguez]" and that Rodriguez "wanted to control the property and ensure that it went to R.S." Defendant, however, has not demonstrated how the video, which depicted a dispute between Rodriguez and Vaughn, tended to show that there was a dispute between Rodriguez and Defendant, that Rodriguez was biased against Defendant, or that Rodriguez had a motive to fabricate what happened in this case. On the contrary, in the video, Rodriguez seems inclined to protect Defendant, at least from Vaughn.

**{17}** Defendant next argues that the video was relevant to rebut Rodriguez's claims that she was afraid of Defendant, wanted to avoid him, and wanted to keep R.S. from seeing him after the incident. Defendant argues that by going over to his house, Rodriguez "virtually guarantee[d]" continued contact with Defendant. Rodriguez, however, did not come into contact with Defendant in the video. Indeed, in the video, Rodriguez told Vaughn that Defendant had called her from jail that morning, which suggests Rodriguez had reason to believe Defendant was not home at the time. Likewise, there is no suggestion in the video that Rodriguez did or did not want to keep R.S. from Defendant. Finally, as for the video's probative value to show Rodriguez's demeanor following the incident, the record is silent on how close in time the video occurred to the incident. Given this, the video does not, as Defendant suggests, rebut the State's evidence of Defendant's demeanor right after the incident.

**{18}** On this record, we cannot say the district court erred in determining that the video was not relevant. *See* Rule 11-401 NMRA (defining relevant evidence); Rule 11-402 NMRA ("Irrelevant evidence is not admissible."); *see also State v. Wesson*, 1972-NMCA-013, ¶ 7, 83 N.M. 480, 493 P.2d 965 (stating that "[w]here the materiality of the evidence is doubtful, the admission of such evidence is within the discretion of the [district] court"). But, even if the video contained some relevant evidence, we conclude the district court acted well within its discretion in determining that the probative value of the video was substantially outweighed by its prejudicial effect. *See* Rule 11-403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice[.]"); *State v. Chamberlain*, 1991-NMSC-094, ¶ 9, 112 N.M. 723, 819 P.2d 673 ("The [district] court is vested with great discretion in applying Rule [11-]403, and it will not be reversed absent an abuse of that discretion."). The district court did not abuse its discretion in excluding the video.

**B.      The State's Videos of Surveillance Footage From Rodriguez's House**

**{19}** The district court admitted three cell-phone video recordings of monitors playing surveillance footage from Rodriguez's house. Defendant argues that the district court

erred by admitting these videos because they violate the best evidence rule, are not admissible "duplicates," and are not subject to any exception to the best evidence rule. The State responds that Defendant did not preserve these objections, or alternatively that the videos were admissible either as duplicates or as other evidence of content.

**{20}** The best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a statute provides otherwise." Rule 11-1002 NMRA. "A duplicate is typically admissible to the same extent as an original." *State v. Hanson*, 2015-NMCA-057, ¶ 7, 348 P.3d 1070 (citing Rule 11-1003 NMRA); *see also* Rule 11-1001(E) NMRA (defining "duplicate" as "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original"). One exception to the best evidence rule provides that an original, or admissible duplicate, is not required when "all the originals are lost or destroyed, and not by the proponent acting in bad faith"—in which case "other evidence of the content" of the recording is admissible. Rule 11-1004(A) NMRA. For evidence to be admissible under Rule 11-1004, the proponent must establish by a preponderance of the evidence that it did not act in bad faith in failing to obtain the original. *Hanson*, 2015-NMCA-057, ¶ 12. The proponent may so establish through "circumstantial evidence that a diligent effort was made to obtain the originals or by eliciting direct testimony from a witness who caused their loss or destruction." *Id.* ¶ 13.

**{21}** In this case, the district court found that the original surveillance footage was not lost by the State in bad faith. The district court reasoned

> with the testimony of . . . Rodriguez and the testimony of the officer here, that he did review the [surveillance footage] at or about the time that this happened [and] that they were accurate, the court is going to find that based on the testimony that the State has met its burden of establishing by preponderance of the evidence that the original recordings were lost or destroyed and that they were not done as a result of bad faith, and I am going to allow them to be admitted during the trial.

These findings were supported by the direct testimony of Rodriguez regarding the circumstances of the loss of the original surveillance footage and her efforts to reclaim the original. To the extent Defendant argues that the evidence was insufficient to support the district court's ruling, we are unpersuaded. We detect no error in the district court's finding that the original surveillance footage was not lost in bad faith and its conclusion that the alternative evidence of the surveillance footage—the cell-phone videos—was admissible as "other evidence of content," pursuant to Rule 11-1004. As such, we need not discuss preservation or consider whether the videos constitute admissible duplicates.

## C.    Defendant's Statements to the Detective

**{22}** Defendant argues he should have been allowed to question Detective Christopher Bradley regarding the content of statements Defendant made to Detective Bradley after the incident. Defendant contends that he said he never touched the knife or knife sharpener during the incident and he asked Detective Bradley to test these items for fingerprints and DNA. Defendant also contends that he told Detective Bradley he did not call Rodriguez on the day of the incident and that law enforcement's failure to follow up on this statement indicated the investigation was inadequate. The State responds that Defendant's argument was not preserved or, alternatively, that any error was harmless.

**{23}** Even if we assume Defendant's argument was preserved and the district court erred in excluding the statements, any such error does not warrant reversal here. "Improperly admitted [or excluded] evidence is not grounds for a new trial unless the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. Where, as here, the error is evidentiary, rather than constitutional, we evaluate whether there is a reasonable *probability* that the error affected the verdict. *Id.* ¶ 36. "Defendant bears the initial burden of demonstrating that he was prejudiced by the error." *State v. Astorga*, 2015-NMSC-007, ¶ 43, 343 P.3d 1245. The State contends— and we agree—that the error, if any, was harmless because Defendant was still able to examine Detective Bradley regarding the investigation, without his statements, and has not demonstrated the exclusion of the statements may have changed the outcome of the trial.

**{24}** Although Defendant argues that "the court effectively prevented counsel from pursuing [a] line of defense[,]" he has not shown that his defense theory was foreclosed, given his ability to cross-examine Detective Bradley about the investigation. Indeed, Detective Bradley was asked whether he took any action to investigate what Defendant had told him, to which he responded, "No." And Defendant specifically asked Detective Bradley whether the knife and knife sharpener were tested for fingerprints or DNA, to which he again answered in the negative. And while Defendant baldly argues that had his statements been admitted, "Detective Bradley's failure[s] would have seemed more egregious," this falls short of demonstrating prejudice. *See State v. Cox*, A-1-CA-35997, mem. op. ¶¶ 17, 18 (N.M. Ct. App. May 30, 2019) (non-precedential) (concluding the defendant had not met his burden when he made only conclusory assertions of prejudice, articulated no theory of prejudice, and cited no legal authority to support his claim of prejudice). Because Defendant has not met his initial burden to demonstrate prejudice, we conclude, even if it was error to exclude Defendant's statements, it was harmless.[2]

### III.    Clerical Error

**{25}** The parties agree that the amended judgment and sentence contains a typographical error, indicating that Defendant's conviction followed a no-contest plea

---

[2]Having found no other error by the district court, we need not address Defendant's cumulative error argument. *See State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211.

instead of a jury trial. We agree that this apparent clerical error should be corrected on remand.

**CONCLUSION**

**{26}** We reverse Defendant's battery conviction and remand to the district court to vacate this conviction and resentence Defendant accordingly and to correct the amended judgment and sentence to reflect that Defendant was convicted following a jury trial. We otherwise affirm.

**{27}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**