# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMCA-036**

**Filing Date: May 2, 2019**

**No. A-1-CA-35208**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DAVID GONZALES,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Certiorari Denied, July 1, 2019, No. S-1-SC-37707. Released for Publication July 23, 2019.

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**ATTREP, Judge.**

**{1}**    Defendant David Gonzales appeals his convictions for racing on highways (NMSA 1978, § 66-8-115 (1978)), aggravated fleeing a law enforcement officer (NMSA 1978, § 30-22-1.1 (2003)), and careless driving (NMSA 1978, § 66-8-114 (1978)). Defendant argues that: (1) there is insufficient evidence to sustain his conviction for racing on highways and (2) his convictions for aggravated fleeing and careless driving violate double jeopardy. We agree with Defendant's double jeopardy argument and,

accordingly, remand to the district court to vacate Defendant's conviction for careless driving. We otherwise affirm.

**BACKGROUND**

**{2}**     At trial, Officer Joshua Herrera of the Las Cruces Police Department testified to the events giving rise to Defendant's convictions. While on duty in his marked patrol car, Officer Herrera was stopped at a red light behind two pickup trucks. One truck was directly in front of him and the other truck was in the right-hand lane. When the light turned green, Officer Herrera observed the driver of the truck to his right (later identified as Defendant) "rev[] up [his] engine and start[] peeling out." Defendant's truck "sat there while the tires were squealing," creating blue smoke. Defendant then "darted into the intersection once the tires were able to gain grip." Defendant's truck "lunged forward so fast that it left a gap" between Defendant and the rest of traffic, which enabled Officer Herrera to pull into Defendant's lane.

**{3}**     After Officer Herrera engaged his emergency lights, Defendant pulled into a bank parking lot. Officer Herrera pulled in behind Defendant, left his emergency lights on, and got out of his patrol car. As the officer approached, the truck began "creeping forward" as if Defendant had left it in drive and taken his foot off the brake. Officer Herrera ordered Defendant to stop, and Defendant eventually brought his vehicle to a stop. When asked what happened at the intersection, Officer Herrera testified that Defendant said that "the guy beside him had pissed him off," referring to the truck to Defendant's left at the intersection. Defendant disputed this statement at trial and testified that he told Officer Herrera that he "popped the clutch in the intersection." After Officer Herrera requested Defendant's driver's license, insurance, and registration, Defendant "stepped on the gas" and took off from the parking lot. According to the officer, he had to "jump back . . . to get away from [Defendant's] vehicle." Defendant "sped down the parking lot," turned out onto the street, and passed "through civilian traffic at a high rate of speed."

**{4}**     Officer Herrera ran back to his patrol car, advised dispatch that Defendant was fleeing, and began to pursue Defendant with his lights and sirens on. There was substantial traffic on the road at the time, and the officer observed Defendant make a right-hand turn onto Roadrunner Lane, causing a white car to maneuver out of the way. Officer Herrera pursued Defendant onto Roadrunner Lane, where Defendant continued to drive fast behind other vehicles, forcing these vehicles to attempt to move to the right. Due to traffic conditions, Officer Herrera's supervisor quickly ordered him to stop pursuing Defendant.

**{5}**     As the officer began to slow down and turn off his lights and sirens, he saw Defendant attempt to make a right-hand turn into a driveway. Because he was driving too fast, however, Defendant was unable to complete the turn successfully. His truck flew into the air and landed upside down in a ditch full of water. Officer Herrera then re-engaged his emergency equipment and proceeded to the crash, finding Defendant's truck partially submerged in water with Defendant trapped inside. With the help of other

officers, Officer Herrera pulled Defendant to safety. Defendant testified that the entire chase took maybe three minutes and spanned a distance of, at most, a half of a mile. The parties stipulated at trial that, shortly after the incident, Defendant's blood alcohol content was above the legal limit.

**{6}** Defendant was charged with aggravated assault upon a peace officer, aggravated fleeing a law enforcement officer, driving while under the influence, careless driving, racing on highways, and various other Motor Vehicle Code offenses. Prior to trial, Defendant pleaded guilty to two Motor Vehicle Code offenses. The jury acquitted Defendant of aggravated assault upon a peace officer and convicted him of all remaining charges. Defendant appeals his convictions for racing on highways, aggravated fleeing a law enforcement officer, and careless driving.

## DISCUSSION

### I. Sufficient Evidence Supports Defendant's Conviction for Racing on Highways

**{7}** Defendant first contends that the evidence at trial was insufficient to support his conviction for racing on highways. To the extent Defendant's sufficiency argument turns on an interpretation of the racing on highways statute, "that presents a question of law which is reviewed de novo on appeal." *State v. Chavez*, 2009-NMSC-035, ¶ 10, 146 N.M. 434, 211 P.3d 891. As is stated often, "[i]n interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "In discerning legislative intent, we look first to the language used and the plain meaning of that language." *Id.* "[W]hen a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *Id.* "After reviewing the statutory standard, we apply a substantial evidence standard to review the sufficiency of the evidence at trial." *Chavez*, 2009-NMSC-035, ¶ 11.

**{8}** The racing on highways statute provides, in relevant part, that:

> no person shall drive a vehicle on a highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration or for the purpose of making a speed record, whether or not the speed is in excess of the maximum speed prescribed by law, and no person shall in any manner participate in any such race, drag race, competition, contest, test or exhibition.

Section 66-8-115(A). The jury was instructed consistent with this statutory language. Both at trial and on appeal, the State contends that Defendant's conduct at the stop light prior to the traffic stop violated the portion of Section 66-8-115 criminalizing driving in an "exhibition of speed or acceleration." *Id.* The State does not contend that Defendant engaged in any race, competition, contest, or test. Defendant argues that in order to be

convicted under Section 66-8-115 for exhibition of speed or acceleration, two elements must be present—first, there must be a competition or agreement with another driver, and second, any exhibition must include a display of driving skill or prowess to an audience.

**{9}** In service of his primary contention that a person can violate Section 66-8-115 only by making an agreement with another or by engaging in a competition, Defendant relies on a non-precedential memorandum opinion from this Court. In *State v. Dominguez*, this Court stated in passing that, "[a]s for exhibition of speed, [Section 66-8-115] applies to drag racing and speed competitions." No. 30,189, memo op. at *3 (N.M. Ct. App. May 4, 2010) (non-precedential). *Dominguez* did not, however, address the elements necessary for conviction under Section 66-8-115, nor did it address conduct similar to that at issue in this appeal. *Id.* To the extent *Dominguez* can be read to require that a race or competition with another is a necessary element of every violation of Section 66-8-115, that conclusion is contrary to the clear and unambiguous language in the statute, as discussed below, and is in tension with an earlier Supreme Court opinion in which the Court imposed no such requirement. *See State v. Luna*, 1980-NMSC-009, ¶¶ 5, 10, 93 N.M. 773, 606 P.2d 183 (construing municipal ordinance identical to Section 66-8-115 and concluding that a traffic stop was "reasonable and valid" where the defendant "pull[ed] away from a street intersection at a high rate of acceleration, causing the rear tires of his car to spin on the pavement"), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990). Consequently, we do not find *Dominguez* persuasive and we decline to follow its rationale. *See* Rule 12-405(A) NMRA ("Non-precedential dispositions may be cited for any persuasive value[.]").

**{10}** Moreover, Defendant's construction of Section 66-8-115 is not borne out by the statutory language. The statute sets out a list of prohibited driving activities—in particular, "no person shall drive a vehicle on a highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration *or* for the purpose of making a speed record . . . and no person shall in any manner participate in any such race, drag race, competition, contest, test *or* exhibition." Section 66-8-115(A) (emphases added). The use of the disjunctive "or" makes plain that the statute may be violated in a number of ways—by engaging in a race, drag race, competition, contest, test, *or* exhibition—at least two of which (a test or an exhibition) require no agreement or competition among drivers. Were we to interpret "exhibitions of speed or acceleration" to require some element of competition or agreement, as Defendant requests, this portion of the statute would be redundant given the other prohibitions. Consequently, we decline to read Section 66-8-115 in this manner. *See Trujillo*, 2009-NMSC-012, ¶ 11 ("We will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written."); *State v. Padilla*, 2008-NMSC-006, ¶ 33, 143 N.M. 310, 176 P.3d 299 ("A statute must be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citations omitted)). Based on the clear and

unambiguous statutory language, we conclude that "exhibition of speed or acceleration" does not require an agreement or competition.[1]

**{11}** Defendant next advances a narrow definition of "exhibition," asserting it requires a "display of driving skill to an audience." The term "exhibition" is not defined in the relevant criminal statutes. It has, however, been defined by our Supreme Court in other criminal contexts. In *State v. Myers*, for example, our Supreme Court relied on a dictionary definition to define an "exhibition" as a "showing, evincing, or showing off." 2009-NMSC-016, ¶ 19, 146 N.M. 128, 207 P.3d 1105 (construing the meaning of "lewd and sexually explicit exhibition" within NMSA 1978, Section 30-6A-2(A)(5) (2001) (internal quotation marks and citation omitted)). The Court also found guidance in the dictionary definition of the verb "to exhibit," meaning to "show or display outwardly especially by visible signs or actions[.]" *Id.* (alteration, omission, internal quotation marks, and citation omitted). We find these dictionary definitions instructive in our construction of Section 66-8-115. *See State v. Lindsey*, 2017-NMCA-048, ¶ 14, 396 P.3d 199 ("Our courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory construction inquiries." (alteration, internal quotation marks, and citation omitted)). Contrary to Defendant's contention, the plain meaning of the term "exhibition" does not require a display of a particular skill, such as driving prowess. And, as discussed below, any requirement that the "exhibition of speed or acceleration" involve a public display to another has been met in this case.

**{12}** We pause to emphasize that we have not attempted to draw the boundaries of criminality of "exhibition of speed or acceleration," nor do we suggest that every tire screech, squeal, or instance of peeling out will be sufficient to impose criminal liability under Section 66-8-115. Nonetheless, we have little trouble concluding that the evidence in this case is sufficient to support a conviction under Section 66-8-115 for "exhibition of speed or acceleration." "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). In making this determination, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all

---

[1] We note that our conclusion here is in line with other jurisdictions' constructions of similar statutes. *See People v. Grier*, 38 Cal. Rptr. 11, 12 (Dist. Ct. App. 1964) (concluding that statute "could be violated by two or more persons competing in speed in vehicles on the highway *or* by one person displaying the speed of his vehicle on the highway to another person in the first person's car or in another car" (emphasis added) (internal quotation marks and citation omitted)); *People v. Heckard*, 431 P.2d 1014, 1016 (Colo. 1967) (concluding that statute "defines two primary offenses, . . . the 'speed or acceleration contest,' and the 'exhibition of speed or acceleration'. . . . [and that a] 'contest' ordinarily implies a plurality of participants in a deliberate, competitive act . . . , while an 'exhibition' implies a person's display, for the purpose of attracting public attention, of the same acts").

conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{13}** In this case, with an officer and at least one other motorist present, Defendant revved his engine as soon as a traffic light turned green, causing his tires to peel out, squeal, and produce blue smoke. Once Defendant's tires gained traction on the road, his truck "darted into the intersection[,]" accelerating quickly in front of other traffic. Further, when asked what happened at the intersection, according to Officer Herrera, Defendant said that "the guy beside him had pissed him off[.]" Viewing this evidence in the light most favorable to the verdict, there is substantial evidence that Defendant intentionally engaged in an outward display of speed or acceleration to another. *See Luna*, 1980-NMSC-009, ¶ 10 (assuming that there is a display requirement for exhibition of speed or acceleration and concluding any such requirement was met when at least one person, a police officer, was present to witness the defendant's conduct at an intersection); *Grier*, 38 Cal. Rptr. at 11 (holding that the defendant engaged in an "exhibition of speed on a highway" when he accelerated in such a manner "as to cause the tires to scream loudly and to lose traction"); *Bice v. State*, 17 S.W.3d 354, 355-56 (Tex. Ct. App. 2000) (holding, under a substantially similar statute, that the defendant engaged in an "exhibition of vehicle speed or acceleration" when he left a stoplight by spinning his tires). We, therefore, conclude that a rational jury could have found beyond a reasonable doubt the essential facts required for conviction under Section 66-8-115 for "exhibition of speed or acceleration." We affirm Defendant's conviction for the same.

## II. Defendant's Convictions for Both Aggravated Fleeing and Careless Driving Violate Double Jeopardy

**{14}** Defendant challenges his convictions for aggravated fleeing and careless driving as violating his constitutional right to be free from double jeopardy. The double jeopardy clause "protects defendants from receiving multiple punishments for the same offense." *State v. Ramirez*, 2018-NMSC-003, ¶ 38, 409 P.3d 902 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises a double-description double jeopardy claim, "in which a single act results in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. In analyzing double-description challenges, we employ the two-part test, set out in *Swafford v. State*, in which we examine: (1) whether the conduct is unitary, and, if so, (2) whether the Legislature intended to punish the offenses separately. 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* Defendant's double jeopardy challenge presents a constitutional question of law, which we review de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

### A. Unitary Conduct

**{15}** The resolution of the unitary-conduct question "depends to a large degree on the elements of the charged offenses and the facts presented at trial." *State v. Franco*,

2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). "[S]eparate punishments may be imposed if the offenses are separated by sufficient indicia of distinctness." *Id.* (internal quotation marks and citation omitted). In making this determination, "we consider such factors as whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *Id.* "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted).

**{16}** Defendant was charged with aggravated fleeing a law enforcement officer. In order to prove that charge, the State was required to show in relevant part that Defendant "willfully and carelessly dr[ove] his [motor] vehicle in a manner that endanger[ed] the life of another person[.]" Section 30-22-1.1(A); *see also* UJI 14-2217 NMRA (jury instruction for aggravated fleeing a law enforcement officer). Defendant was also charged with careless driving, which requires proof that Defendant operated a motor vehicle on a highway "in a careless, inattentive or imprudent manner, without due regard for the width, grade, curves, corners, traffic, weather and road conditions and all other attendant circumstances." Section 66-8-114(B); *see also* UJI 14-4505 NMRA (jury instruction for careless driving).

**{17}** Defendant argues that the State relied on the same conduct—Defendant's driving on Roadrunner Lane—as the basis for both his aggravated fleeing and careless driving convictions. The State disagrees and argues that Defendant's conduct is not unitary because the jury reasonably could have inferred separate factual bases supporting each charge. In particular, the State argues that the conduct at issue here is not unitary because "[t]he offense of aggravated fleeing a law enforcement officer was completed and all its elements were met when [Defendant sped off from the bank parking lot], endangering the life and safety of Officer Herrera who was standing very close to Defendant's vehicle." The State's argument is not well supported.

**{18}** In the context of a defendant's continuous flight from law enforcement, this Court has rejected the principle that the technical completion of one offense is sufficient to find non-unitary conduct. In particular, in *State v. Padilla*, we examined whether the defendant's flight from law enforcement—first in a vehicle and then on foot—was non-unitary. 2006-NMCA-107, ¶¶ 24-30, 140 N.M. 333, 142 P.3d 921 *rev'd on other grounds*, 2008-NMSC-006. Although we recognized that "our Supreme Court has recently emphasized that conduct may be viewed as non-unitary if one can clearly discern a point in the events where one crime has been completed and another crime has yet to be committed," *id.* ¶ 29 (citing *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61), we, nevertheless, concluded that "it is artificial to parse conduct when a suspect flees from the police in one way and then immediately continues to flee in another way," *id.* ¶ 30.

**{19}** Likewise, here, there is nothing in the record that would serve to separate the offenses of aggravated fleeing and careless driving under the State's theory on appeal.

From the testimony at trial, it appears this entire incident lasted at most minutes and spanned less than one mile. There were no discernable intervening events between Defendant's initial flight in the parking lot and his continuing flight on Roadrunner Lane, and Defendant throughout drove in a manner that suggested a singular focus—escaping apprehension. All this supports a determination that Defendant engaged in one continuous course of unitary conduct. *See Padilla*, 2006-NMCA-107, ¶ 30 (concluding that the defendant's flight, first in a vehicle and then on foot, was unitary conduct); *State v. LeFebre*, 2001-NMCA-009, ¶¶ 15-18, 130 N.M. 130, 19 P.3d 825 (concluding that, notwithstanding that the defendant used different means to evade officers and wrecked his vehicle, which precipitated his flight on foot, there was unitary conduct that could support only one conviction for evading or obstructing an officer).

**{20}**   Regardless, the State at trial did not direct the jury to Defendant's actions in the parking lot as the basis for the aggravated fleeing offense. Instead, the State specifically directed the jury to consider Defendant's conduct on Roadrunner Lane as satisfying the essential elements of both aggravated fleeing and careless driving. With respect to aggravated fleeing, the State argued in closing: "Was [Defendant] putting other people at risk? Look at Roadrunner [Lane]. . . . He's forcing traffic to move to the right while he's passing it." Also in closing, the State discussed careless driving, directing the jury to "just look at Roadrunner Lane" for testimony establishing the required elements. *See State v. Silvas*, 2015-NMSC-006, ¶¶ 10, 19, 343 P.3d 616 (considering the state's closing arguments in determining whether the defendant's conduct was unitary); *State v. Ramirez*, 2016-NMCA-072, ¶ 17, 387 P.3d 266 (same); *State v. Contreras*, 2007-NMCA-045, ¶ 22, 141 N.M. 434, 156 P.3d 725 (same).

**{21}**   Citing to *State v. Herrera*, 2015-NMCA-116, 362 P.3d 167, the State nevertheless contends that "when reviewing whether conduct is unitary in the double jeopardy context, we [should] indulge in all presumptions in favor of the verdict." *Id.* ¶ 12 (internal quotation marks and citation omitted). We question the applicability of this presumption in a case, such as this, where the State specifically directs the jury to the same conduct to establish two crimes. In such a case, our Supreme Court has indicated that, even where there was ample evidence of non-unitary conduct, we should presume unitary conduct where the State's theory at trial relied on the same conduct to prove the two offenses at issue. *See Franco*, 2005-NMSC-013, ¶ 11 (presuming unitary conduct where the state's theory at trial relied on the same conduct to convict the defendant of both possession of a controlled substance and tampering with evidence, even though there was ample evidence in the record of non-unitary conduct); *cf. Contreras*, 2007-NMCA-045, ¶ 23 (declining to presume unitary conduct where the state had not limited its legal theory to a single factual basis for multiple charges and additionally "provided the jury with sufficiently distinct factual bases upon which it could base [the d]efendant's conviction"). Because the State explicitly directed the jury to consider the same conduct to support Defendant's convictions for both aggravated fleeing and careless driving, we presume unitary conduct.

**B.    Legislative Intent**

**{22}** Having presumed unitary conduct, we analyze the second *Swafford* prong. *Franco*, 2005-NMSC-013, ¶ 11.[2] "The sole limitation on multiple punishments is legislative intent[.]" *Id.* ¶ 12 (alteration, internal quotation marks, and citation omitted). "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. If all elements of one statute are "subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *Silvas*, 2015-NMSC-006, ¶ 12; *see Swafford*, 1991-NMSC-043, ¶ 30 (stating that when the statutes are the same under the legislative intent prong, "punishment cannot be had for both"). When dealing with statutes that are "vague and unspecific" or "written with many alternatives," we apply a modified version of the *Blockburger* analysis. *State v. Gutierrez*, 2011-NMSC-024, ¶ 59, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted). Under the modified *Blockburger* analysis, "we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Branch*, 2018-NMCA-031, ¶ 25.

**{23}** Both statutes at issue here define the criminal conduct broadly. As noted, aggravated fleeing requires that a defendant "willfully and carelessly dr[ove] his [motor] vehicle in a manner that endanger[ed] the life of another person," § 30-22-1.1(A), while careless driving requires proof that a defendant operated a motor vehicle on a highway "in a careless, inattentive or imprudent manner, without due regard for the width, grade, curves, corners, traffic, weather and road conditions and all other attendant circumstances," § 66-8-114. Given these terms, there are innumerable ways in which a person might drive that would violate both statutes. Consequently, we apply modified *Blockburger* here. *See State v. Luna*, 2018-NMCA-025, ¶ 14, ___P.3d ___ (applying modified *Blockburger* where the "generic terms [of the statute] make it possible for numerous forms of conduct to qualify as the requisite actus reus element of the statute"), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36896, Jan. 23, 2018); *see also Swick*, 2012-NMSC-018, ¶ 25 (applying the modified *Blockburger* analysis to the attempted murder statute because many forms of conduct could satisfy the necessary elements); *Branch*, 2018-NMCA-031, ¶ 28 (applying the modified *Blockburger* analysis to the aggravated assault statute because many forms of conduct could satisfy the necessary elements). In applying modified *Blockburger*, we examine "the actual legal theory in [this] particular case by considering such resources as the evidence, the charging documents, and the jury instructions." *State v. Montoya*, 2013-NMSC-020, ¶ 49, 306 P.3d 426.

**{24}** Because the indictment and jury instructions provide no detail about the State's theory of the case, we look to the evidence as discussed by the State in closing arguments. *See Silvas*, 2015-NMSC-006, ¶¶ 19-20 (looking to the state's closing

---

2 Regrettably, the State did not present any argument in its briefing regarding the legislative intent prong of *Swafford*, and so we conduct this analysis without input from the State.

argument as evidence of the state's theory for purposes of applying a modified *Blockburger* analysis); *see also Swick*, 2012-NMSC-018, ¶ 21 (examining charging document and jury instructions in modified *Blockburger* analysis). As noted, the State directed the jury during its closing to Defendant's driving on Roadrunner Lane as the basis for both aggravated fleeing and careless driving. Under the State's theory at trial, Defendant committed aggravated fleeing when he "willfully and carelessly [drove] a vehicle" down Roadrunner Lane (a highway, as defined in NMSA 1978, Section 66-1-4.8(B) (1991)), endangering other motorists. Likewise, Defendant drove "in a careless, inattentive or imprudent manner" based on the same conduct occurring on Roadrunner Lane. Section 66-8-114(B). Thus, although careless driving, when viewed in the abstract, requires proof of an element that aggravated fleeing does not—i.e., operating a motor vehicle *on a highway*, § 66-8-114(A)—as applied in this case, it does not. *See Silvas*, 2015-NMSC-006, ¶ 14 (considering, under modified *Blockburger*, "not only whether each statute *in the abstract* requires proof of a fact that the other does not, but also whether the statute, as *applied* by the [s]tate in a given case, overlaps with other criminal statutes so that the accused is being punished twice for the same offense" (alteration, internal quotation marks, and citation omitted)). Because Defendant's conduct occurred on a highway, in this case, careless driving does not require proof of any fact not contained in aggravated fleeing.

**{25}** "The only arguable difference in the two crimes is a slightly different articulation of the necessary mental state." *Padilla*, 2006-NMCA-107, ¶ 34. We note, however, that driving a vehicle "willfully and carelessly" as required by the aggravated fleeing statute encompasses the mental state of civil negligence necessary to sustain a conviction for careless driving. *See State v. Yarborough*, 1996-NMSC-068, ¶ 21, 122 N.M. 596, 930 P.2d 131 (holding "that the careless-driving statute requires only a showing of ordinary or civil negligence"); *Padilla*, 2006-NMCA-107, ¶ 34 (concluding that the differing mental states required by two statutes evidenced "a distinction without a difference" when the lesser mental state would always be subsumed within the greater). Applying modified *Blockburger* to the State's theory of the case, all elements of careless driving are subsumed within the elements of aggravated fleeing. Thus, there is no indication that the Legislature intended to punish these two crimes separately. *See Swafford*, 1991-NMSC-043, ¶ 30 (stating that when the two charged statutes are the same under legislative intent prong, "punishment cannot be had for both").

**{26}** We, therefore, conclude that Defendant's convictions for both aggravated fleeing and careless driving violate double jeopardy, and consequently Defendant's conviction for careless driving must be vacated. *See Padilla*, 2006-NMCA-107, ¶ 36 ("Where we conclude that double jeopardy has been violated, we vacate the lesser offense and retain the conviction for the greater offense.").

**CONCLUSION**

**{27}** Having concluded Defendant's right to be free from double jeopardy was violated, we remand to the district court to vacate the lesser offense of careless driving and to resentence Defendant accordingly. Because we also conclude that Defendant's

conviction for racing on highways is supported by sufficient evidence, we affirm the same.

**{28}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**J. MILES HANISEE, Judge**