This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37145**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MICHAEL RICHARD PADILLA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mark A. Peralta-Silva, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** Defendant was convicted of aggravated fleeing a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1(A) (2003), and careless driving, contrary to NMSA 1978, Section 66-8-114(B) (1978). On appeal, Defendant challenges the sufficiency of the evidence in support of his conviction for aggravated fleeing a law enforcement officer, and also contends that his convictions on both charges violate the prohibition against double jeopardy. We conclude that the evidence was sufficient to support Defendant's aggravated fleeing conviction, but because we agree with

Defendant's double jeopardy argument, his conviction for careless driving must be vacated.

**DISCUSSION**

**I.      Sufficiency of the Evidence**

**{2}**      Defendant contends the evidence to sustain his conviction for aggravated fleeing a law enforcement officer was insufficient because the State failed to show that he drove in a manner that actually endangered another person. In pertinent part, the crime of aggravated fleeing "consists of a person willfully and carelessly driving his vehicle in a manner that endangers the life of another person after being given a visual or audible signal to stop[.]" Section 30-22-1.1(A); *see also State v. Vest*, 2021-NMSC-020, ¶¶ 13, 19, 488 P.3d 626 (clarifying that the aggravated fleeing statute requires "only that a defendant willfully and carelessly drove so dangerously that the defendant created a risk of harm," but "does not require that an identifiable person was actually endangered as a result of the defendant's flight from law enforcement").

**{3}**      Applying the standard of review for challenges to the sufficiency of the evidence articulated in *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230, we conclude the evidence is sufficient to show that Defendant drove willfully and carelessly in a manner that endangered the life of another person during his flight. The officer who pursued and arrested Defendant testified that while on duty he was traveling southbound on I-25 in Albuquerque and observed Defendant at around midnight also traveling southbound in a Chevy Equinox. Defendant was driving between 100 and 105 miles per hour and was swerving between lanes. The officer engaged his lights and sirens to pull over Defendant. Defendant slowed down to speeds of at least 68 miles per hour, but did not yield; he continued to drive southbound on I-25 for about two-and-a-half miles with the officer behind him, still in pursuit. Defendant exited the highway at the Tramway exit on the right-hand side, traveling westbound where Tramway becomes Roy Road. Defendant then made a left turn from Roy Road into the backside of a Phillip's 66 gas station and came to an abrupt halt.

**{4}**      The officer stopped his patrol vehicle about one-and-a-half car lengths behind Defendant's Chevy and began to exit his patrol vehicle to make contact with Defendant when Defendant put his vehicle in reverse and accelerated rapidly in reverse directly toward the officer. The officer immediately got back into his patrol vehicle to avoid getting struck by Defendant, put his patrol vehicle in drive, and quickly steered it out the way so that Defendant's vehicle would pass the officer without hitting his patrol vehicle. Defendant made a U-turn and accelerated quickly through the gas station, past the gas pumps back toward Roy Road. Defendant drove off-road into a six to eight-inch curb at such a high rate of speed that he broke off large chunks of the concrete curb and the front end of his vehicle. Past the curb, Defendant drove into a dirt embankment, became completely airborne, went down in the ditch of the embankment, and wound up high-centered on far side of the dirt embankment with his wheels off the ground. Defendant

put his vehicle in reverse and drive to try to dislodge it, but was unable to do so. The officer made contact with Defendant and Defendant finally stopped his attempt to flee.

**{5}** Defendant's vehicle suffered severe damage in the crash, the airbag deployed, and he was taken from the vehicle, placed onto a gurney and transported to the hospital by ambulance. The officer indicated that he feared for his life when Defendant was driving in reverse straight at him, and he feared for the safety of other drivers because, even though there were no other people at the gas station, Defendant was driving dangerously in an area with a large casino across the street where people are constantly coming and going.

**{6}** Viewing this evidence in the light most favorable to the guilty verdict, we conclude the evidence is sufficient to support the jury's finding that "[D]efendant drove willfully and carelessly in a manner that endangered the life of another person[.]" Because Defendant's argument is limited to the endangerment prong, we affirm his conviction for aggravated fleeing.

## II.      Double Jeopardy

**{7}** Defendant next argues that his convictions for aggravated fleeing and careless driving violate his right to be free from double jeopardy. "A double jeopardy claim is a question of law that we review de novo." *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

**{8}** The double jeopardy clause protects "against multiple punishments for the same offense." *Id.* ¶ 7. We analyze Defendant's double-description challenge by applying a two-part test that requires us to examine: (1) "whether the conduct underlying the offenses is unitary," and, if so, (2) "whether the [L]egislature intended to create separately punishable offenses." *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "[I]f the first part of the test is answered in the affirmative, and the second in the negative, . . . the double jeopardy clause [will] prohibit multiple punishment in the same trial." *Id.*

**{9}** "The resolution of the unitary-conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial." *State v. Gonzales*, 2019-NMCA-036, ¶ 15, 444 P.3d 1064 (internal quotation marks and citation omitted). "Separate punishments may be imposed if the offenses are separated by sufficient indicia of distinctness." *Id.* (alteration, internal quotation marks, and citation omitted). "[W]e consider such factors as whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104. "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Gonzales*, 2019-NMCA-036, ¶ 15 (internal quotation marks and citation omitted).

**{10}** With these standards in mind, we turn to the two statutes at issue here and the facts supporting each of the charges. As discussed above, in order to prove the charge of aggravated fleeing a law enforcement officer, the State was required to show that "[D]efendant drove willfully and carelessly in a manner that endangered the life of another person." *See* UJI 14-2217 NMRA. For the charge of careless driving, the State was required to show that "[D]efendant operated a motor vehicle in a careless, inattentive or imprudent manner without due regard for the width, grade, curves, corners, traffic, weather, road conditions and all other attendant circumstances." *See* UJI 14-4505 NMRA.

**{11}** Defendant argues that the State relied on the same conduct—speeding over 100 miles per hour on I-25—as the basis for both charges at trial. After reviewing the record, we agree. With respect to the charge of aggravated fleeing, the State directed the jury to consider that Defendant "is going down I-25 over 100 miles an hour, there are other drivers there. When he gets off Tramway, that's right up from the casino, there's other people in that area as well. And as everyone who has ever driven I-25 knows, it's not zoned for 100 mile[s] per hour, it's not safe driving, it endangers everyone on there." The State then addressed the charge of careless driving, arguing that "[Defendant]'s going 100 mile[s] an hour down the highway that's not made for that, not designed for that. It's nighttime and there's other people on the road. You've also heard from the deputy that he is not maintaining his lane, he's swerving in and out of the lane." *See Gonzales*, 2019-NMCA-036, ¶ 20 (considering the state's closing argument to determine whether the defendant's conduct was unitary); *State v. Silvas*, 2015-NMSC-006, ¶¶ 10, 19, 343 P.3d 616 (same).

**{12}** The State argues that "the prosecution did not exclusively point the jury to evidence of Defendant's driving on I-25 as proof of both offenses—during questioning of Deputy Peters and the State's rebuttal, evidence that Defendant endangered the deputy in the parking lot for purposes of aggravated fleeing was also referenced and emphasized." After reviewing the cited portions of the transcript, we disagree with this characterization. On rebuttal the State continued to specifically direct the jury to Defendant's speeding on I-25 to establish the aggravated fleeing charge. The prosecutor asked the jury to "[c]onsider the actions of . . . Defendant and what the officer told you. He's taking I-25, he sees cars, around the car is swerving, he is going 100 mile[s] per hour, lights going on, he's not stopping. So are you really going to tell me that you have a police chase with somebody going over 100 miles an hour on I-25 and that's not endangering the rest of the drivers?" While the State went on to describe Defendant's conduct after he left the freeway for the purpose of establishing the element of endangerment for the aggravated fleeing charge, there is no question that the State's legal theory for both charges relied on the same conduct or that the State explicitly directed the jury to consider the same conduct to support Defendant's convictions for aggravated fleeing and careless driving. These facts distinguish this case from *State v. Contreras*, 2007-NMCA-045, ¶¶ 22-23, 141 N.M. 434, 156 P.3d 725, the sole authority the State relies upon to rebut Defendant's argument. *Id.* (explaining that based on the State's closing argument, the State's legal theory was not limited to same conduct as the basis for multiple charges and noting that the State "provided the

jury with sufficiently distinct factual bases upon which it could base [the d]efendant's conviction"). Accordingly, because the State's theory at trial relied on the same conduct to prove the two offenses at issue, we conclude the conduct was unitary. *See Gonzales*, 2019-NMCA-036, ¶ 21.

**{13}** Turning to the second prong of the double-description test, we must determine whether the Legislature intended aggravated fleeing and careless driving to be punished separately. *See Swafford*, 1991-NMSC-043, ¶ 25. Under substantially similar circumstances, this Court applied the modified *Blockburger* test to the State's theory of the case and concluded that "all elements of careless driving are subsumed within the elements of aggravated fleeing. Thus, there is no indication that the Legislature intended to punish these two crimes separately." *Gonzales*, 2019-NMCA-036, ¶ 25. The same conclusion is warranted here for the same reasons. Based on the State's theory of the case as presented during its closing, we conclude that Defendant's convictions for both aggravated fleeing and careless driving violate double jeopardy. *See id.* ¶¶ 22-26. Therefore, Defendant's conviction for careless driving, the lesser offense, must be vacated. *Id.* ¶ 26.

**CONCLUSION**

**{14}** For the reasons set forth above, we affirm Defendant's conviction for aggravated fleeing a law enforcement officer. Because we conclude Defendant's convictions violate double jeopardy, we remand to the district court to vacate the lesser offense of careless driving and resentence Defendant accordingly.

**{15} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**