This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38116

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TANNER R. AUTREY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Van Snow, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Tanner Autrey appeals his convictions for first-degree kidnapping (NMSA 1978, § 30-4-1 (2003)); second-degree criminal sexual penetration (CSP) (NMSA 1978, § 30-9-11(E) (2009)); misdemeanor aggravated battery against a household member (NMSA 1978, § 30-3-16 (2008, amended 2018)); and interference with communications (NMSA 1978, § 30-12-1 (1979)). We conclude that Defendant's convictions for CSP and kidnapping violate the prohibition against double jeopardy, and we accordingly remand to the district court to vacate the lesser of these convictions. Concluding Defendant's additional claims of error lack merit, we otherwise affirm.

**BACKGROUND**

**{2}**     Defendant's convictions arose from an incident in December 2016 involving Victim, a twenty-one-year old, married woman whom Defendant had known since their teenage years.

**{3}**     Victim testified to the following at trial. In the month prior to the incident, Victim and Defendant had been communicating with each other and had had sexual intercourse three times. Victim did not consent on any of these occasions. She decided to give Defendant thirty minutes to explain his conduct, so she agreed to go to his home. Having arrived around midnight, and having let the thirty minutes pass, Victim tried to leave and a struggle between the two ensued. Defendant forced Victim into his bedroom. Defendant undressed Victim, and he took her phone and put it in a drawer. Defendant also choked, struck, and spit on Victim, and he duct-taped her hands behind her back. At some point during the struggle, Defendant penetrated Victim vaginally with his penis; he also attempted to penetrate her anally and to put his genitalia in her mouth. Eventually, Victim managed to retrieve her phone, call for help, and leave. Victim testified that the entire ordeal lasted about four hours, and the rape happened at the end but she did not remember how long it lasted—possibly an hour or two.

**{4}**     Defendant testified in his defense, maintaining that Victim consented to the entire incident. The jury received the case late in the evening and finished its deliberations shortly after midnight. The jury convicted Defendant of first-degree kidnapping, based on his inflicting a sexual offense; second-degree CSP, based on vaginal penetration and physical injury; aggravated battery against a household member; and interference with communications.

**DISCUSSION**

**{5}**     Defendant raises several claims on appeal. First, Defendant argues that his CSP and kidnapping convictions violate the prohibition against double jeopardy. Second, Defendant argues the district court erred in permitting evidence of his post-indictment flight. Additionally, Defendant contends the district court unconstitutionally limited the evidence of Victim's past sexual conduct and the jury's deliberation late into the night deprived him of a fair trial.

**I.     Double Jeopardy**

**{6}**     Defendant first contends that his convictions for CSP and first-degree kidnapping violate his right to be free from double jeopardy. As relevant here, the double jeopardy clause "protects defendants from receiving multiple punishments for the same offense." *State v. Ramirez*, 2018-NMSC-003, ¶ 38, 409 P.3d 902 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises what is known as a double-description double jeopardy claim, "in which a single act results in multiple charges under different criminal statutes." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289.

**{7}** In analyzing double-description claims, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223: (1) whether the conduct underlying the offenses is unitary and (2) if so, whether the Legislature intended to punish the offenses separately. *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* (internal quotation marks and citation omitted). "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

**{8}** Defendant specifically contends that, because his conviction for CSP was used to elevate his kidnapping conviction from a second- to a first-degree offense, his CSP conviction was effectively subsumed in his first-degree kidnapping conviction and punishment for both offenses violates his right to be free from double jeopardy. In light of this Court's recent decision in *State v. Serrato*, 2021-NMCA-027, 493 P.3d 383, *cert. denied*, 2020-NMCERT-___ (No. S-1-SC-38204, May 4, 2020), which squarely addressed and decided a substantially identical double jeopardy claim, we agree with Defendant.[1]

## A.  Unitary Conduct

**{9}** As for the first *Swafford* prong, unitary conduct, "[t]he proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). In making this determination, we examine the evidence produced at trial against the elements of the offenses, as stated in the jury instructions. *See id.* ¶ 9 (examining "the elements stated in the instructions and the evidence produced at trial" to determine whether the conduct underlying multiple convictions was unitary); *State v. Foster*, 1999-NMSC-007, ¶ 39, 126 N.M. 646, 974 P.2d 140 (focusing the unitary conduct analysis on the jury instructions and the evidence at trial to determine what the jury found), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683; *see also Swafford*, 1991-NMSC-043, ¶ 27 (providing that the unitary conduct question "depends to a large degree on the elements of the charged offenses and the facts presented at trial").

**{10}** In *Serrato*, this Court addressed whether the defendant's convictions for criminal sexual contact of a minor (CSCM) and first-degree kidnapping violated his right to be free from double jeopardy. 2021-NMCA-027, ¶ 21. To determine whether the conduct underlying these convictions was unitary, the Court first examined the elements of first-degree kidnapping. *Serrato* concluded that the state had to prove the elements of the

---

[1]Although Defendant did not cite *Serrato* in his briefing, the State identified *Serrato* in its answer brief. *See* Rule 16-303(A)(2) NMRA (providing that a lawyer has a duty "to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"). For the reasons we discuss, we are not persuaded by the State's arguments that *Serrato* does not control in this case.

base crime of second-degree kidnapping—i.e., in relevant part, "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict . . . a sexual offense on the victim," § 30-4-1(A)(4)—as well as the element that elevated the offense to a first-degree felony—i.e., in relevant part, "inflict[ing] . . . a sexual offense upon the victim," § 30-4-1(B). *See Serrato*, 2021-NMCA-027, ¶¶ 23-26; *see also Foster*, 1999-NMSC-007, ¶¶ 33-34 (providing that the crime of aggravated kidnapping was not completed until the defendant caused the victim great bodily harm). In so holding, the Court rejected the state's argument that first-degree kidnapping was complete, for double jeopardy purposes, as soon as the unlawful taking, restraining, transporting or confining occurred, but prior to the commission of a sexual offense. *See Serrato*, 2021-NMCA-027, ¶¶ 24-25; *see also id.* ¶ 26 (providing that "our task in a double jeopardy analysis is to examine not only the conduct required for the base crime of the greater offense, but also that required to elevate the base crime to a higher felony degree"). The Court then held that because "the elements of first-degree kidnapping were not satisfied until a sexual offense was committed" and there was evidence of only one sexual offense (CSCM), "[t]he conduct underlying [the d]efendant's convictions for first-degree kidnapping and CSCM [wa]s unitary." *Id.* ¶ 26.

**{11}**    Applying these concepts to the facts of this case, we likewise conclude that unitary conduct underlies Defendant's convictions for CSP and first-degree kidnapping. Consistent with *Serrato*, the elements of first-degree kidnapping were not satisfied until a sexual offense was committed. *See id.* The first-degree kidnapping instruction provided in relevant part that "[D]efendant inflicted a sexual offense upon [Victim] during the course of the kidnapping." *See* UJI 14-403(5) NMRA. The jury instructions did not identify which "sexual offense" the State contended Defendant inflicted. On appeal, however, the State effectively concedes that the sexual offense used to prove first-degree kidnapping was Defendant's CSP conviction. The State nonetheless contends that Defendant's CSP and first-degree kidnapping convictions are not unitary on two grounds. We are not persuaded.

**{12}**    First, as in *Serrato*, the State contends that the CSP and the kidnapping occurred at separate times because the kidnapping was completed when Defendant restrained Victim prior to committing a sexual offense. *Serrato* forecloses the State's argument, *see* 2021-NMCA-027, ¶¶ 23-26, and we decline to revisit *Serrato* today.[2]

---

2The State invites us to revisit *Serrato* and unitary conduct analysis more generally by suggesting we reject the well-established principle that a double jeopardy violation arises if one offense is subsumed in another. The State's argument runs contrary to *Serrato*, yet the State does not request that *Serrato* be overruled. *See State v. Riley*, 2010-NMSC-005, ¶ 40, 147 N.M. 557, 226 P.3d 656 (Chávez, J., specially concurring) ("[The appellant] does not make a case for us to overrule our precedent by applying the factors relevant to a stare decisis analysis. . . . [The appellant's] request lacks the disciplined approach we have required in numerous opinions on the subject of stare decisis."), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 54, 306 P.3d 426; *cf. Arco Materials, Inc. v. N.M. Tax'n & Revenue Dep't*, 1994-NMCA-062, ¶ 3, 118 N.M. 12, 878 P.2d 330 (stating that a formal Court of Appeals opinion is controlling even when our Supreme Court has granted certiorari to review the case), *rev'd on other grounds sub nom. Blaze Constr. Co. v. N.M. Tax'n & Revenue Dep't*, 1994-NMSC-110, 118 N.M. 647, 884 P.2d 803.

**{13}** Second, notwithstanding the State's recognition that CSP was used to prove first-degree kidnapping, the State contends that the conduct was not unitary because "th[e] jury heard that Defendant inflicted multiple distinct sexual acts on [V]ictim over an extended period of time." The State does not elaborate on this point and, given the particular facts and circumstances of this case, we find it ill-conceived. As stated, our task in the unitary conduct inquiry is to determine what the jury reasonably could have found in light of the elements in the jury instructions and the evidence presented at trial. *See Franco*, 2005-NMSC-013, ¶ 7; *Foster*, 1999-NMSC-007, ¶ 39. It is true that the kidnapping instruction required the State to prove that Defendant inflicted a "sexual offense" upon Victim without identifying the specific offense Defendant committed. And it also is true that Victim testified to sexual offenses other than the vaginal penetration resulting in Defendant's CSP conviction. But the jury was never instructed on the elements of these other sexual offenses.

**{14}** Critically, "sexual offense" is not a term within the common parlance of the jury. *See State v. Sotelo*, 2013-NMCA-028, ¶ 25, 296 P.3d 1232 (comparing the type of first-degree kidnapping in which the defendant inflicted "physical injury," which does not require the jury to consider elements of a separate crime, with the alternative type in which the defendant committed a "sexual offense," which requires the jury to find the elements of that crime). It is instead a separate crime, *see generally* NMSA 1978, Ch. 30, Art. 9 (criminalizing numerous "sexual offenses"), with specific elements, *see generally* UJI 14, Ch. 9 NMRA, of which the jury must be instructed, and that the jury must find, to convict a defendant of first-degree kidnapping based on infliction of a sexual offense. *See Sotelo*, 2013-NMCA-028, ¶ 25 (providing that, if a "sexual offense" is alleged to increase kidnapping to a first-degree felony, "the jury must find that the elements of that crime are satisfied"); *State v. Dominguez*, 2014-NMCA-064, ¶ 19, 327 P.3d 1092 (providing that the jury's return of a verdict on criminal sexual penetration established the "sexual offense" element of first-degree kidnapping); *see also State v. Gallegos*, 2009-NMSC-017, ¶ 16, 146 N.M. 88, 206 P.3d 993 (providing that "[i]f the [s]tate wishes to convict an accused of first-degree kidnapping, it must also establish the elements in Subsection (B) [of Section 30-4-1], contained in the special verdict form [(UJI 14-6018 NMRA (withdrawn)]" (emphasis omitted)).[3]

---

What is more, the State's argument runs contrary to a long line of New Mexico Supreme Court cases we are not at liberty to disregard. *See, e.g.*, *State v. Porter*, 2020-NMSC-020, ¶ 20, 476 P.3d 1201 ("Under the modified *Blockburger* analysis, if we determine that one of the offenses subsumes the other offense, the double jeopardy prohibition is violated, and punishment cannot be had for both." (internal quotation marks and citation omitted)); *Swafford*, 1991-NMSC-043, ¶ 30 ("If [the *Blockburger*] test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both."). *See generally State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 20, 135 N.M. 375, 89 P.3d 47 (stating that the Court of Appeals is bound by Supreme Court precedent).

3*Sotelo*, *Dominguez*, and *Gallegos* relied on a special verdict form previously used to differentiate second- from first-degree kidnapping. *See* UJI 14-6018 (2014). In relevant part, the special verdict form instructed that "[u]nless the court has instructed on the essential elements of the sexual offense, these elements must be given in a separate instruction." *Id.* use note 5. This special verdict form was withdrawn when the New Mexico Supreme Court adopted separate instructions for second- and first-degree kidnapping that "incorporate the distinguishing findings [from the special verdict form] as essential

**{15}** The jury here was instructed on only one sexual offense—the CSP for which Defendant was convicted. The jury was instructed that it could find Defendant committed CSP if he caused Victim to engage in sexual intercourse and, in particular, that he caused the insertion of his penis into Victim's vagina through the use of force or physical violence.[4] This instruction thereby limited the evidence the jury could consider to find Defendant guilty of CSP. *See Franco*, 2005-NMSC-013, ¶ 8 (determining whether the jury instructions limited the scope of the evidence the jury could consider). As a result, while the jury *in theory* could have relied on sexual offenses other than the vaginal penetration to convict Defendant of first-degree kidnapping had it been instructed on those offenses, the jury did not in fact do so, because it was never so instructed. *See Silvas*, 2015-NMSC-006, ¶¶ 18-19 (confirming that conduct was unitary based on the jury instructions, in which the state "directed the jury to the same act for both crimes . . . as the basis to convict for both crimes"). Instead, the jury properly could have found that Defendant committed only one sexual offense—the vaginal penetration resulting in Defendant's CSP conviction. Because of this, we conclude that the conduct underlying Defendant's convictions for first-degree kidnapping and CSP is unitary. *See Serrato*, 2021-NMCA-027, ¶ 26.

## B.     Legislative Intent

**{16}** Having found unitary conduct, we turn to the second *Swafford* prong "to determine whether the [L]egislature intended to create separately punishable offenses." 1991-NMSC-043, ¶ 25. Where, as here, the Legislature did not expressly specify in the applicable statutes whether it intended to make the offenses separately punishable, we employ the rule of statutory construction expressed in *Blockburger v. United States*, 284 U.S. 299 (1932), and its progeny, to determine whether each offense requires proof of a fact the other does not. *State v. Gonzales*, 2019-NMCA-036, ¶ 22, 444 P.3d 1064. "If the *Blockburger* test shows that one statute is subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *Silvas*, 2015-NMSC-006, ¶ 12.

**{17}** In examining legislative intent in *Serrato*, this Court applied a modified version of the *Blockburger* test because the kidnapping statute has multiple alternatives. *Serrato*, 2021-NMCA-027, ¶ 28. The Court explained, "under [the] modified . . . *Blockburger* analysis, we look to the [s]tate's trial theory to identify the specific criminal cause of

---

elements." UJI 14-403 comm. cmt. For the reasons already stated, we do not believe that the omission of a use note, similar to the one found in UJI 14-6018 (2014), in the current first-degree kidnapping instruction evinces a shift away from the requirement that the essential elements of the "sexual offense" used to elevate a kidnapping offense be given to the jury. *See generally State v. Percival*, 2017-NMCA-042, ¶ 12, 394 P.3d 979 ("To secure a conviction, the state must prove each of the essential elements of the charged offense. When the jury is not instructed on the essential elements of the crime, it has not been instructed on the law applicable to the crime charged." (internal quotation marks and citations omitted)).

4The jury instruction provided that Defendant "caused the insertion of [his] penis and/or fingers into the vagina of [Victim]." Because there was no evidence that Defendant digitally penetrated Victim's vagina, this alternative does not factor into our double jeopardy analysis. *See Franco*, 2005-NMSC-013, ¶ 7; *Foster*, 1999-NMSC-007, ¶ 39.

action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Serrato*, 2021-NMCA-027, ¶ 29 (internal quotation marks and citation omitted). To determine the state's theory, we examine the charging documents, the state's closing argument, and the jury instructions. *Id.* Examining these things, *Serrato* observed that, to convict the defendant of first-degree kidnapping, the state had to prove the defendant committed a "sexual offense" and there was only one sexual offense (CSCM) in that case. *Id.* ¶¶ 30-31. The Court concluded that, "although first-degree kidnapping and CSCM, when viewed in the abstract, might require proof of an element that the other does not—as applied in this case, it does not." *Id.* ¶ 32. Thus, because the sexual offense was subsumed within the first-degree kidnapping offense, double jeopardy arose and the defendant's CSCM conviction had to be vacated. *Id.*

**{18}** Applying these concepts here, the grand jury indictment made generic allegations for both CSP and first-degree kidnapping and is of no assistance. The State's closing argument also is not very descriptive, but the prosecutor did argue that "for both the kidnapping and the [CSP], . . . [Defendant] absolutely forced sex on this girl." Turning again to the jury instructions: For CSP, the instruction required the jury to find, in relevant part, that Defendant caused Victim to engage in sexual intercourse and, in particular, that Defendant caused the insertion of his penis into Victim's vagina through the use of force or physical violence. For first-degree kidnapping, the instruction required the jury to find, in relevant part, that Defendant inflicted a "sexual offense" upon Victim during the course of the kidnapping. As already discussed, the jury was not instructed on any sexual offense other than CSP for vaginal penetration, and, as a result Defendant was only found to have committed this one sexual offense. *See Serrato*, 2021-NMCA-027, ¶ 29 (examining the state's theory under modified *Blockburger* to determine what specific criminal cause of action or actions the defendant was convicted).

**{19}** Thus, applying modified *Blockburger*, we conclude that Defendant's CSP offense is subsumed within his first-degree kidnapping offense and our double jeopardy analysis is complete.[5] *See Serrato*, 2021-NMCA-027, ¶ 32; *see also Silvas*, 2015-NMSC-006, ¶ 12. We accordingly remand to the district court to vacate the lesser conviction of CSP. *See Serrato*, 2021-NMCA-027, ¶ 32.

## II.   Evidence of Defendant's Post-Indictment Flight

**{20}** We next consider Defendant's claim that the district court erred in admitting evidence that, after Defendant was charged, he fled New Mexico to Seattle, Washington. While Defendant acknowledges that our courts have deemed evidence of

---

5Again, although the State effectively concedes that CSP was subsumed in first-degree kidnapping in this case, the State continues to argue at length why we should nevertheless determine that no double jeopardy violation has occurred. We are not persuaded. As discussed, the State's argument runs contrary not only to *Serrato*, *see Arco Materials, Inc.*, 1994-NMCA-062, ¶ 3, but also to binding New Mexico Supreme Court precedent. *See, e.g.*, *Porter*, 2020-NMSC-020, ¶ 20; *Swafford*, 1991-NMSC-043, ¶¶ 30-31.

a defendant's flight admissible as relevant evidence, in that it "tends to show consciousness of guilt," *State v. Pacheco*, 2008-NMCA-131, ¶ 37, 145 N.M. 40, 193 P.3d 587 (internal quotation marks and citation omitted), he nevertheless asserts that the district court erred by admitting such evidence. In Defendant's view, the danger of unfair prejudice associated with the evidence of his flight outweighed its probative value under Rule 11-403 NMRA. Defendant reasons that (1) "the only contested issue"—whether the encounter was consensual—"turned on the credibility" of those witnesses; and (2) the evidence "was less probative of consciousness of guilt" than of "fear of imprisonment."

{21}     "Whether there was possible unfair prejudice in admitting the evidence [of flight] is a matter within the trial court's discretion." *State v. Trujillo*, 1981-NMSC-023, ¶ 32, 95 N.M. 535, 624 P.2d 44. We find no abuse of discretion. Defendant's first point tends to emphasize the probative value of the evidence at issue—not its unfair prejudice. That is, it being evidence not in the form of either Defendant's or Victim's testimony, it stood to aid the jury. *Cf. State v. Morales*, 2000-NMCA-046, ¶¶ 5-7, 129 N.M. 141, 2 P.3d 878 (taking into account evidence of the defendant's flight when weighing the sufficiency of the evidence that the defendant was conscious of the unlawfulness of his acts). Defendant's second point tends to minimize the evidence's prejudicial effect—especially given that, as the State points out, Defendant testified that his reason for leaving the state was fear of imprisonment. All in all, Defendant fails to persuade us that the district court's ruling represented an abuse of its discretion.

## III.     Defendant's Remaining Claims of Error

{22}     Defendant raises two other points of error. Specifically, Defendant contends that the district court unconstitutionally limited the evidence of Victim's past sexual conduct and the fact that the trial and the jury's deliberation ran late into the night deprived him of a fair trial. To the extent these claims of error are preserved and properly before this Court, after consideration of the briefing, the record, and relevant law, we conclude they are without merit and provide no basis for reversal. We, therefore, decline to address them further.

## CONCLUSION

{23}     For the foregoing reasons, we conclude that Defendant's convictions for CSP and first-degree kidnapping violate the prohibition against double jeopardy. We therefore remand to the district court to vacate Defendant's CSP conviction and to resentence Defendant accordingly. Otherwise, we affirm.

{24}   **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**